THE STATE, DEFENDANT IN ERROR, v. MATTHEW JEF-
FERSON, PLAINTIFF IN ERROR.

Argued December 1, 1916—Decided July 18, 1917.

1. Courts of impeachment in the United States perform no puni-
tive function. The single purpose of their existence is the pro-
tection of the people against public servants who have betrayed
their trust and have violated the law which they were sworn
to obey.

2. A judgment of conviction, in impeachment proceedings, under
article 6, section 3, of the state constitution, is not a condi-
tion precedent to the indictment of a prosecutor of the pleas for
malfeasance in office and punishment thereunder.

On error to the Supreme Court, whose opinion is reported
in 88 *N. J. L.* 447.

For the plaintiff in error, *Howard L. Miller* and *Clarence
L. Cole.*

For the state, *Josiah Stryker* and *John W. Wescott,* attor-
ney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The judgment brought up by
the present writ is one affirming a conviction of the plaintiff
in error in the Cape May Quarter Sessions upon an indict-
ment charging him with malfeasance in office. The office
held by him was that of prosecutor of the pleas of the county,
and the specific malfeasance charged against him was the
protection of violators of the criminal law and affording them
immunity from punishment for a money consideration.

Numerous assignments of error were submitted to the Su-
preme Court, and received consideration by that tribunal in
the opinion promulgated by it. The same grounds of attack
upon the conviction which were there made have been re-

peated before us. With a single exception, we are content with the disposition made of them by that court and for the reasons set out in the opinion.

The only assignment which we consider merits further discussion. is that directed at the refusal of the trial court to grant a motion in arrest of judgment, which was based upon the ground that the plaintiff in error, being a state officer, could.not be legally indicted and tried for malfeasance in office until after impeachment proceedings had been instituted against him and a judgment of conviction rendered therein. The argument is, that this is a right afforded to him by article 6, section 3, paragraph 3 of our constitution, which declares that "judgment in cases of impeachment shall not extend farther than to removal from office, and to disqualification to hold and enjoy any office of honor, profit or trust under this state; but the party convicted shall nevertheless be liable to indictment, trial and punishment according to law."

A consideration of the English cases is not helpful in solving the question presented, for the reason that the courts of impeachment of this country, both federal and state, although· modeled upon the English tribunal, so far as its formation and methods of procedure are concerned, differ from it fundamentally in the purpose of their existence and the power exercised by them. Stated specifically, the jurisdiction of the English court is purely criminal, inflicting punishment of the same kind and in the same measure as the ordinary criminal courts of the kingdom. (For instance, Lord Stafford, after an indictment for high treason had been presented against him, and before trial thereon, was proceeded against by articles of impeachment for the same offence, was convicted by the house of lords, sentenced to death on the conviction and executed. 7 How. St. Tr. 1297. So, too, after the rebellion of 1745 some of the participants therein were indicted and convicted in the common law courts and executed on such convictions, while articles of impeachment were exhibited against at least one of the other partici-

pants, and the trial thereon resulted in his conviction and execution. *Campbell's Life of Lord Hardwick, p,* 106.) The courts of impeachment of this country, on the other hand, perform no punitive function. The single purpose of their existence is the protection of the people against public servants who have betrayed their trust and have violated the law which they were sworn to obey. The sentence pronounced against the offender affects neither his life, liberty nor property, but merely removes him from the office he has disgraced and bars him from ever afterward holding any office of honor, trust or profit.

From what has been said it is apparent that the constitutional provision appealed to by the plaintiff in error was not adopted from any rule of procedure prevailing in England. So far as my examination has gone, it first appears in the New York constitution of 1777, and next in that adopted by New Hampshire in 1784. It was written into the federal constitution in 1787, and after that from time to time was adopted as part of the fundamental contract of at least seventeen of our sister states. Its purpose must be either that claimed for it on behalf of the plaintiff in error or else to settle beyond controversy the claimed right of a person convicted by a court of impeachment to plead that conviction as a bar to a trial on an indictment for the same offence which brought about his removal from office.

So far as the researches of counsel and of the court have gone, but one case has been found in which a contention similar to that advanced by the plaintiff in error has been made, viz., *Commonwealth* v. *Rowe,* 112 *Ky.* 482; 66 *S. W. Rep.* 29. In that case the Supreme Court of Kentucky, after a full consideration of the question, reached the conclusion that the impeachment of a commonwealth's attorney is not a condition precedent to his indictment for malfeasance in office and punishment thereunder. The opinion is a carefully-considered one, and the conclusion reached seems to be fully supported by the logic of the argument set out in it. But, independent of the reasoning of the case cited, we are

entirely satisfied that the conclusion of the Kentucky court is the correct one. If it be true that the effect of the constitutional provision is to stay proceedings in the criminal courts until after a conviction in the court of impeachment, then punishment for crime in such a case is made to depend upon whether or not the house of assembly will see fit to present articles of impeachment against the offending office-holders. This it may or may not do, as the judgment of its members may dictate. It may be that the offender's term of office will have expired during the recess of the legislature or will expire almost immediately after its convening, and that impeachment proceedings therefore will be inadvisable. Other reasons for non-action by the house of assembly will readily suggest themselves. That any such possible immunity from punishment was intended to be conferred upon betrayers of public trust by the framers of this provision of the constitution cannot be conceded and never has been so understood by our people. The history of our own state is a demonstration of this fact. From 1784, when Peter Hopkins, a justice of the peace, was impeached by the house of assembly, down to the present time, there have been just four impeachment trials in New Jersey. Certainly, no one will suppose that during this period of one hundred and thirty-three years the four persons thus proceeded against constitute all of the office-holders under the state government who have been untrue to the trust reposed in them. In fact, the very slightest examination of our official reports will demonstrate the contrary.

The history of the federal court of impeachment is similar. The records of the senate show that from the adoption of the constitution, in 1787, until now, articles of impeachment have been presented against one president, one United States senator, one member of the cabinet and six members of the judiciary. All other civil officers serving under the federal government who have been guilty of criminal conduct while in office have been dealt with by the ordinary tribunals of justice.

The records of our sister states have not been available to us for inspection, but it is more than probable that they will disclose a similar condition; for, as was said by Professor Theodore W. Dwight, in an article on *"Trial by Impeachment"* (6 *Am. L. Reg.* (*N. S.*) 257) : "This mode of trial is rarely exercised and practically dormant."

It has been suggested, rather than argued, that unless the indictment of a state officer is postponed until the termination of impeachment proceedings, the interests of the state will suffer by its deprivation of the services of the officer while the title to the office remains in him. This suggestion, when applied to the present case, would seem to savor of grim humor, if it were not for the seriousness of the matter. When it is remembered that the specific charge upon which the plaintiff in error was convicted was the shielding of violators of the criminal law from punishment for a pecuniary consideration, the suggestion that by his conviction and sentence the state is being "deprived of his services" is very wide of the mark; it would be much more accurate to say that by it the state is being protected against the further prostitution of his office.

We conclude that the refusal of the motion in arrest of judgment was proper, and that on the whole case the conviction should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 12.

*For reversal*—None.