RICH v. EASON et al. (No. 25.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 11, 1915.)

LIBEL AND SLANDER ⬤══38—PRIVILEGED COMMUNICATIONS—GRAND JURORS.

As the law defining the duties of the grand jury does not authorize that body to make reports concerning the moral character or fitness of officers, a report by the grand jury, questioning the moral fitness of the sheriff, but not presenting any indictment against him for crime, is not privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 117–123; Dec. Dig. ⬤══ 38.]

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Action by H. C. Rich against George W. Eason, and others. From a judgment for defendants plaintiff appeals. Reversed and remanded.

George F. Ingraham, of Nacogdoches, for appellant. Blount & Strong and S. M. Adams, all of Nacogdoches, for appellees.

BROOKE, J. It was agreed that the following is a correct statement of the case, and the result of the suit: The appellees were impaneled as the grand jury for Nacogdoches county, Tex., at the fall term, 1914, of the district court of that county. Appellant was sheriff of the county at that time, his term expiring in November thereafter. He was serving his second term. Appellee, after looking into the offenses committed, on the 8th day of October, reported to the court in writing that they had so done. Their report consisted of seven sections, and is attached to the amended petition. The first section is about returning bills of indictment; the second recommending the appointment of a finance committee; the third is a eulogy on the educational interests of Nacogdoches county. The fourth is:

"We find, after our deliberations, that the peace and dignity of our county is good and worthy of special mention, that crime is abating, and the peace and quiet of our homes reflect a happy condition of morals and society."

The fifth is:

"We show to your honor that we have personally inspected the county jail, and find that it is comparatively well kept, and is in a sanitary condition, and those confined therein should have no grounds for complaint."

The sixth is:

"We regret exceedingly that it becomes our duty to report to your honor that we have been apprised of the fact that the sheriff's office, Constable precinct No. 1, and marshal of the city of Nacogdoches, are guilty of immoral conduct unbecoming the dignity of their exalted position. We make this report that public may have the benefit of our investigations, and may be able to avoid the election of officers in the future, who may become derelict of their moral obligations to the people who elect them."

The seventh is thanks to the district court and the district and county attorneys. Appellant alleges averments of the meaning and effect and intention of sections 4, 5, and 6. The report was filed by each of appellees individually. Appellant filed this suit against them for libel on the 30th day of October, 1914, and filed his amended petition, upon which the case was submitted, suing for $10,000 actual and $10,000 exemplary damages, basing his suit upon sections 4, 5, and 6 of said report, and principally upon paragraph 6 thereof. Appellees answered, filing their amended answer on February 11, 1915, consisting of demurrers, denials, plea of good faith, and the truth of the report. Appellant files his supplemental petition, consisting of demurrers and denial of the truth of said report. On February 15, 1915, all parties being present, the case was heard on special exception of appellee to the petition and the report attached thereto, and nothing else, that the report was a privileged communication, upon which a suit for libel could not be based. The court sustained the special demurrer, and adjudged that the report was a privileged communication, and could not be made the basis of a suit for libel. Appellant declined to amend. The court dismissed the case, to which judgment of the court, the appellant excepted, and gave notice of appeal to the Court of Civil Appeals at Galveston, which said case has been transferred to this court for consideration.

Appellant assails, by his first assignment of error, the action of the court in sustaining the demurrer to plaintiff's petition, and in holding that the report of the grand jury was a privileged matter upon which a suit cannot be based, and in dismissing the case. The articles in our criminal procedure which define the duties of the grand jury are silent with respect to any report, such as is alleged to have been made with reference to the misconduct or moral character of the appellant, as claimed in this case. We are cited to a number of authorities by the briefs of both appellant and appellee. We have carefully read the same, but are frank to say that the same do not reflect much light upon the real issue in this case. We have failed to find any case reported in our state, and therefore we are relegated to the text-writers and to the decisions of the other states. An eminent authority, writing upon this proposition, says:

"A privileged communication is a communication which, under ordinary circumstances, would be defamatory, made to another in pursuance of a duty, political, judicial, social, or personal, so that an action for libel or slander will not lie, though the statement may be false, unless in the two last cases actual malice be proved in addition."

Continuing, the writer says:

"The great underlying principle upon which the doctrine of privileged communications rests is public policy. This is more especially the case with absolute privilege, where the interests and necessities of society, require that the time and occasion of a publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights and to suffer loss for the benefit of the common welfare. Happily for the citizens, this class of privilege is restrained to narrow and well-defined lines. Confined privilege exists in much larger numbers of cases. It extends to all communications made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation. The occasion on which the communication was made rebuts the inference of malice prima facie arising from a statement prejudicial to the character of the plaintiff, and puts upon him the burden of proving that there was malice. In short, that the defendant was actuated by motives of personal spite or ill will, independent of the occasion on which the communication was made." Newell on Slander & Libel, §§ 492, 493.

The same writer, above quoted, says:

"In the less important matters, however, the interests and welfare of the public do not demand that the speaker should be freed from all responsibility, but merely require that he should be protected so far as he is speaking honestly for the common good. In these cases the privilege is said not to be absolute, but qualified; and a party defamed may recover damages, notwithstanding the privilege, if he can prove that the words were not used in good faith, but that the party availed himself of the occasion willfully and knowingly for the purpose of defaming the plaintiff. In this class of cases it will be convenient to divide the occasions into four classes: (1) Where the circumstances of the occasion cast upon the defendant the duty of making a communication to a certain other person to whom he makes such communication in the bona fide performance of such duty; (2) statements made for protection of private interests; (3) where the defendant has an interest in the subject-matter of the communication, and the person to whom he communicates it has a corresponding interest; (4) reports of the proceedings of courts of justice and legislative bodies."

Continuing, the writer says:

"In those cases where the circumstances of the occasion cast upon a party the duty of making a communication, the duty may be either one which the party owes to society, or one which he owes to himself or his family. Com-

munications made in pursuance of the duty owed to society are: (1) Characters of servants; (2) confidential communications of a private nature; (3) information as to the misconduct of others and crimes; (4) charges against public officers." Newell on Slander & Libel, §§ 561, 562.

The case of Rector v. Smith, reported in 11 Iowa, 306, is almost similar to the case before us. Quoting from that case, the petition alleged that, on or about the 19th day of March, 1859, in the town of Sydney in Fremont county, Iowa, the defendant falsely, wickedly, etc., did compose and publish, and cause to be composed and published, of and concerning the plaintiff, and of and concerning his official misconduct when he was county judge of said county, a certain false, malicious, scandalous, and defamatory libel, containing, among other things, the following words:

"We feel it our duty also to call attention to a few particulars of accounts under the management of Frederick Rector, which appears to be to indicate extravagance, and in some instances something worse than extravagance, in the appropriation of the funds of the county. * * * First, of extravagance, we find among other minutes the following expenses at the land trial at Council Bluffs, $2,712.85, together with five hundred dollars, for which no account is given on the minute book, but said to have been expended for the same object; making in all $3,212.85, as expenses of said land trials at Council Bluffs, in 1857. * * * We find warrants for money canceled and evidences of money paid to him, for which no acknowledgment can be found."

The defendant's answer contains two counts. The first admits that plaintiff was county judge, but denies malice, and the innuendoes set out in the petition. The second count sets up as a defense the following allegations:

"That at the March term of the district court of Fremont county, to wit, on or about the 19th day of March, 1859, he, this defendant, was one of the grand jurors impaneled and sworn and charged at said term of said court, and whose duty it was by law specially made to inquire into all willful and corrupt misconduct of all county officers and the management of the affairs of said county, and to perform all and singular the duties of grand jurors according to the statute in such cases made and provided. And he says that he, in connection with his fellows, acted in the capacity of grand jurors, and as such grand jury, in the course of their legal investigations, and in the discharge of their duty, without hatred, malice, or ill will, and in good faith, did, during the said term of said court, find from the records of said county and other evidence legally produced before them the facts stated in a certain report of a grand jury at said term, in which report is the pretended libel given in plaintiff's petition, and that on or about the 19th day of March, 1859, this defendant, being then and there the clerk of said grand jury, appeared in open· court with his fellows with their presentments and indictments, among which was the aforesaid report, which is the identical publication referred to in plaintiff's petition as a libel, which report was then and there read by this defendant, as such clerk, by the direction of said grand jury; and he says the said report and the said reading are the pretended libel and publication thereof referred to by plaintiff in his petition. That said grand jury found the facts therein stated in the course of their investigations, as they were legally bound to do, 180 S.W.—20

and that said grand jury ordered him, as their clerk, to write the same, and that after it was written it received the sanction of and was adopted by said grand jury unanimously, and that they directed him as their clerk to read said report in said court, which he did, as he had a perfect right to do, and as was his duty as a member and the clerk of said grand jury. And the defendant further says that neither he nor his fellows, as such grand jury, were actuated by malice or ill will, nor by any improper motive nor desire to injure the plaintiff, but that they found said facts, and prepared and read said report in good faith and for the public good, in the discharge of their duty."

To this count the plaintiff demurred upon the following grounds: (1) That the matters set forth are not in law privileged communications; (2) that the said grand jury had no right, in law, to report upon said matter in the manner set forth in the answer; (3) the answer does not allege that the matters reported by said defendant, as clerk of the grand jury, are true. This demurrer was overruled and plaintiff appeals.

The court, speaking through Baldwin, J., says:

"There is but one question presented for our determination in this case, and that is whether the defendant can plead in justification of the publication of libelous matter concerning the plaintiff as county judge that when such libel was published the defendant was acting as a grand juror; that the matter charged as libelous was a privileged communication made by him as a juror to the court. The communication thus claimed by defendant as privileged charges the plaintiff with willful and corrupt misconduct as a county officer, which is an indictable offense. It is made the duty of the grand jury, when they find that an indictable offense has been committed within their county, to present the same by indictment. * * * By section 2992 it is made the special duty of the grand jury to inquire into the matters specified in the subdivisions of this section. It is under the provisions of this section that the defendant claims that the law authorized and justified him in presenting to the court, as a grand juror, the report in regard to the actions of plaintiff as county judge. The grand jury had no power, nor is it their privilege or duty to present any person for a criminal offense, except by indictment. If the misconduct of an officer does not amount to a crime and is not of such magnitude as would justify the jury in finding an indictment, their powers over the offense complained of are at an end. It is claimed that by section 2992 of the Code the grand jury have the power to report otherwise than by indictment upon the subjects named in the subdivisions of this section. And this construction is claimed upon the ground that the second subdivision * * * contemplates a report by the grand jury, and that if a report can be made upon one of the subjects, the consideration of which is thus specially enjoined upon the jury, a report may be made upon each of the subjects named in this section, or at least they can report upon the condition of the prison and upon the conduct of county officers. An indictment may be presented under each of those subdivisions. Should there be a person imprisoned in the county, it is made the special duty of the jury to inquire into the offense charged, so that the criminal may be brought to speedy trial. Should there have been a willful neglect of duty by the keepers of the prison, they are liable to be indicted for such willful neglect. There can be no question as to the power of the grand jury to indict under the other two subdivisions. A report by a grand jury presents nothing upon which the court can act, unless it is in reference to the condition of the

prison. The court can take no jurisdiction over the complaint charged by such report. Nor can a person thus presented have an opportunity to show himself innocent of the matters complained of. With this view of the question we conclude that the report presented by defendant as a juror was not a privileged communication, and that he cannot plead this in bar of plaintiff's right to recover. The defendant, however, in his answer denies all malice in this publication, and avers that it was made in the discharge of a public duty, and in good faith. If the publication was made without malice and, as the defendant supposed, in the discharge of a public duty, and without any ill will or hatred toward the plaintiff, we are of the opinion that plaintiff ought not to maintain his action.

"Chief Justice Shaw, in the case of Bradley v. Heath [12 Pick. (Mass.) 163, 22 Am. Dec. 418], says: 'Where words imputing misconduct to another are spoken by one having a duty to perform, and the words are spoken in good faith, and in the belief that it comes within the discharge of that duty, * * * no presumption of malice arises from the speaking of the words, and therefore no action can be maintained in such cases without proof of express malice. If the occasion is used merely as a means of enabling the party to utter the slander, to indulge his malice, and not in good faith to perform a duty, * * * the occasion will furnish no excuse.' 12 Pick. 163 [22 Am. Dec. 418]."

In line with the above case, we find a decision handed down by our sister state, Louisiana, reported in Fisk v. Soniat, 33 La. Ann. 1400, in which the same doctrine is announced as in the above case.

We are of the opinion that the case above referred to expresses the correct principles, and is decisive of the instant case, and, so believing, we are impelled to sustain appellant's first assignment, and hold that the lower court erred in sustaining the demurrer and in dismissing the case.

Reversed and remanded.