DANIEL O'REGAN AND WILLIAM GEORGE, PLAINTIFFS,
v. JULIAN H. SCHERMERHORN ET AL., DEFENDANTS.

Decided November 6, 1946.

2

4

For the plaintiffs, *Frank G. Schlosser.*

For the defendants, *Mark Townsend,* Special Deputy Attorney-General.

ACKERSON, S. C. C. The plaintiffs in the above entitled actions are the former Prosecutor of the Pleas of the County of Hudson and the former Assistant Prosecutor, both having served in their respective capacities from February 4th, 1934, to February 4th, 1944. They are suing the twenty-three members of the December term, 1944, grand jury of that county for libel, specifically alleging in their respective complaints that said defendants "* * * did compose and publish a certain false, scandalous, malicious and defamatory

libel of and concerning the plaintiff [in conducting criminal proceedings against one John R. Longo], containing among other things" the following:.

" 'The Prosecutor, Mr. O'Regan, and his assistant, Mr. George, were derelict in their duty in suppressing the Hartkorn report and not calling Hartkorn as a witness, and thus depriving the defendant [Longo] of the opportunity of any benefit of this testimony. In this they were violating Canon 5 of the Canon of Ethics of the American Bar Association, which states that, "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that Justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible."

" 'This Canon has been upheld by the United States Supreme Court.' "

The defendants have appeared by attorney who endorses their joint answer to each complaint as follows: "Mark Townsend, Deputy Attorney-General, Attorney for Defendants."

The subject-matter of these answers is contained in fourteen separate defenses, the first of which attempts to answer specifically each paragraph of the complaint to which the answer is addressed, whereas the others raise separate and distinct defenses.

This matter came before the court originally on motions by the respective plaintiffs to strike these answers, or parts thereof. At the oral argument the defendants were permitted, by order of the court, to supplement their answers by pleading objections that the suits had been brought prematurely and plaintiffs were given leave to reply thereto or move to strike the same as though within the scope of their original motions. At the same time the filing of such supplements to the answers was to be considered as cross-motions by the defendants to strike the respective complaints without further notice. The plaintiffs have now elected to press their original motions as though including an attack upon the aforesaid supplemental matter, and the defendants are pursuing their cross-motions to strike the complaints.

Since the pleadings in each of these cases are practically the same, these motions have been argued and will be con-

sidered in this memorandum as though involving but a single case brought by the plaintiffs jointly.

We will start by considering the defendants' cross-motion to strike the complaint. The first point is that the complaint is legally insufficient because the *ad damnum* clause specifically demands "$100,000 from each of the defendants," whereas the complaint consists of but one count in which the defendants are charged as joint tort feasors and not severally. It is, therefore, argued that in order to seek $100,000 from each defendant, it is necessary, either to have separate suits against each defendant, or separate counts in the complaint against each one. This objection, although technical, seems to be well taken, *Cf. Consolidated Traction Co.* v. *Whelan*, 60 *N. J. L.* 154; 37 *Atl. Rep.* 1106; *Ross* v. *Pennsylvania Railroad Co.*, 5 *N. J. Mis. R.* 811; 138 *Atl. Rep.* 383. The plaintiffs in their brief, anticipating such a conclusion, ask leave to amend the clause in question so that it will demand one amount from the defendants jointly Such permission is granted and we will proceed as though the amendment had already been made. However, if it is not filed within the time hereinafter specified, the complaint will be stricken.

The defendants further insist that the complaint does not state a cause of action because it discloses that the publication therein complained of consisted of a presentment or report delivered by the defendants, as members of the grand jury, to the Court of Oyer and Terminer which accepted and filed it, and since it is not alleged that the defendants in so doing were acting in "clear absence of all jurisdiction," or "without colorable jurisdiction," the publication is absolutely privileged and the defendants protected from liability under the judicial immunity rule pronounced in *Grove* v. *Van Duyn*, 44 *N. J. L.* 654, and *Valentine* v. *Englewood*, 76 *Id.* 509, 517; 71 *Atl. Rep.* 344.

Suffice it to say that the foregoing phrases concerning jurisdiction are mere conclusions of law and would be valueless if inserted in the complaint, the legal sufficiency of which must be appraised by the pleaded facts. Furthermore, and most important on this phase of the matter, the complaint does not disclose, as defendants claim, that the so-called presentment or report was presented to the Court of Oyer and

Terminer nor that said court accepted and filed it. The allegation concerning publication is merely that the defendants, "members of the said December Term, 1944, Grand Inquest * * *, did compose and publish" the defamatory matter which is the subject of complaint. So it does not appear on the face of the complaint that the publication was made by presenting the subject-matter thereof to the court, nor in the course of judicial proceedings, nor as the result of official action by the defendants. It remains for the defendants to allege these matters in a defense of privilege.

This also disposes of the defendants' further contention that the complaint should be stricken because a cause of action cannot accrue until after the document in question, which is an official record, has been expunged from the records or files of the court to which it was returned. The complaint on its face does not disclose a factual basis for such an objection.

Turning now to the plaintiffs' motion addressed to the answer we find that their first contention is that the entire answer should be stricken on the ground that it is beyond the power and authority of the Attorney-General and his deputy to defend this suit on behalf of the former grand jurors because it is conceived that *R. S.* 52:17A–4; *N. J. S. A.* 52:17A–4, limits him to the defense of officers and instrumentalities of the state government and that the defendants do not fall within such classification. Therefore it is insisted that the answer is improperly filed.

It is settled in our state that the Attorney-General has all the power invested in his office at common law except as modified by constitutional or statutory regulation. *Public Utility Commissioners* v. *Lehigh Valley Railroad Co.,* 106 *N. J. L.* 411; 149 *Atl. Rep.* 263.

At common law, as the chief accredited legal adviser of the state, he may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may from time to time require. *State* v. *Robinson,* 101 *Minn.* 277; 112 *N. W. Rep.* 269, 272; 20 *L. R. A.* (*N. S.*) 1127, 1132. He is invested with a broad discretion in determining what matters may be of interest

to the public generally. *Mundy* v. *McDonald,* 216 *Mich.* 444; 185 *N. W. Rep.* 877, 880; 20 *A. L. R.* (*Anno.*) 393, 401.

Our statute respecting the office of Attorney-General is *R. S.* 52:17A–1, *et seq.* (*Pamph. L.* 1944, *ch.* 20, *p.* 50); *N. J. S. A.* 52:17A–1, *et seq.,* which created a new Department of Law to be administered by the Attorney-General. Section 4 thereof, *N. J. S. A.* 52.17A–4, provides that "The powers and duties of the Department of Law shall be the powers and duties now or hereafter conferred upon or required of the Attorney-General, either by the constitution or by the common and statutory law of the State, and as specifically but not exclusively as detailed herein, to wit: * * *. (c) * * * and shall exclusively attend to and control all litigation and controversies to which the State is a party or in which its rights and interests are involved. * * * . (g) Attend generally to all legal matters in which the State * * * is a party or in which its rights or interests are involved."

So we see that the statute does not restrict but rather reaffirms the common law authority of this official to attend to all legal matters in which the people of the state are interested. It is too narrow a view of the case *sub judice* to say that the people of the state at large are not interested, as citizens, in the defense of a case of this nature which involves the legal rights and liabilities of members of grand juries generally, who represent the people of the entire state, and serve by compulsion of law and not voluntarily. Certainly if the people of the state can be said to be interested in their grand jury system and the unfettered operation of it within lawful limits, they are, we think, equally interested in this action growing out of it, depending, as it does, on whether the acts of the defendants, as grand jurors, and therein complained of, were judicial acts, and, therefore, within the rule of immunity from civil liability which public policy has provided for their protection. *Mundy* v. *McDonald, supra.* Parenthetically it may be judicially noticed that at the time of the institution of the present action the Attorney-General was conducting the office of Prosecutor of the Pleas of Hudson County by virtue of section 4(f) of the last mentioned statute because of a vacancy in that office.

We conclude that the present litigation goes to the root of our grand jury system and involves questions in which the interests of the people of the state are concerned. Therefore the action of the Attorney-General, through his deputy, in appearing for the defendants herein was not without legal authority, and the answer, so endorsed, cannot be stricken on the ground asserted by the plaintiffs.

Plaintiffs next move to strike several parts of the first separate defense and all of the other separate defenses, except the third, fifth, eleventh and thirteenth, on grounds now to be considered.

As already stated, the first separate defense attempts to answer specifically each numbered paragraph of the complaint, and accordingly each of such attempted answers is given a number corresponding with the numbered paragraph of the complaint to which it is addressed, and in some instances these answers are divided into subparagraphs.

Several parts of this first separate defense are objected to for various reasons, mostly of a technical nature, which need not be elaborated upon here. Suffice it to say, for present purposes, that the second and fourth subparagraphs of paragraph 2 of the first separate defense must be stricken because they call upon the plaintiffs for proof of matters not charged in the complaint, and seek to retry the criminal matter out of which the alleged libel herein complained of arose. They are, therefore, in violation of rule 39 of this court, *N. J. S. A. Tit. 2.*

Paragraph 4 of the first separate defense, except the specific admission therein,. is an evasive denial of the fourth paragraph of the complaint, and an attempt to compel plaintiffs to prove matters not charged in their complaint, in violation of rules 46 and 39 as claimed by the plaintiffs. Such objectionable matter will. therefore be stricken.

The second subparagraph of paragraph 5 of this defense is an attempted denial of a matter not alleged in the corresponding paragraph of the complaint. Furthermore in this subparagraph of their answer to the George complaint the defendants, by using a double negative actually affirm what they presumably intend to deny. On the whole this pleading

is obscure, uncertain and irregular under rule 39, and constitutes an evasive denial under rule 46. While these are not the reasons advanced by the plaintiffs for such action, nevertheless, the court of its own motion will strike the criticised pleading upon such grounds. *Mt. Pleasant Cemetery Co.* v. *Erie Railroad Co.*, 74 *N. J. L.* 100, 103; 65 *Atl. Rep.* 192.

Paragraph 6 of this defense, after denying the allegations of the corresponding paragraph of the complaint, goes on to state a conclusion of law without specifying the facts on which it is based. All thereof, except the express denial therein, will therefore be stricken by the court of its own motion as frivolous. The point attempted to be made in the matter thus stricken is available under the general denial.

Paragraph 7 of the first separate defense will also be stricken, except the direct admission therein, because the remainder thereof fails to admit, deny, or to assert a lack of knowledge of the remaining allegations of that portion of the complaint to which it is addressed, yet calls upon plaintiffs for proof thereof in violation of rule 34.

Paragraph 8 of this defense, except the express denials contained in the first and last paragraphs thereof, attempts to relate the steps taken by and the evidence produced before the defendants, as grand jurors, in investigating the conduct of the plaintiffs as prosecuting attorneys of Hudson County in the prosecution of a criminal charge against one John R. Longo, resulting in his indictment, trial and conviction. It is then asserted that the defendants, as such jurors, "believed," from the evidence before them, including that of the plaintiffs themselves, in the truth of the statements contained in the document which is the subject of this action. However, belief in the truth of defamatory words is not sufficient to sustain a plea of justification (truth). *Benton* v. *State*, 59 *N. J. L.* 551, 561; 36 *Atl. Rep.* 1041; 13 *Am. & Eng. Encycl. L.* 385, 386. While possibly the defendant in a libel action may plead in mitigation of damages, and not by way of denial of the right of action, his honest belief in the truth of the publication, nevertheless it should clearly appear that it is so pleaded, and the pleading should not set

forth the evidence upon which the belief is based, *Schwarz Bros. Co.* v. *Evening News Publishing Co.,* 84 *N. J. L.* 486, 496-497; 87 *Atl. Rep.* 148. It cannot be so pleaded in any event unless punitive damages are claimed. *Knowlden* v. *Guardian Printing and Publishing Co.,* 69 *N. J. L.* 670; 55 *Atl. Rep.* 287. The pleading here under consideration appears to assert belief in the truth of the publication as a complete defense. At least it is not clearly pleaded as in mitigation of damages. But if the latter is intended the plea is nevertheless defective because it details the evidence upon which the alleged belief is rested.

Nor can this pleading be sustained as a plea of qualified privilege because the necessary element of lack of malice is not properly alleged. Mere "belief" in the truth of a statement is not the legal equivalent of lack of malice in making it, because such belief negatives only one ground upon which malice in fact might be presumed, for, even with such belief, the communication might be malicious on other grounds. *McKnight* v. *Hasbrouck,* 17 *R. I.* 70; 20 *Atl. Rep.* 95; *Lapelina* v. *Santangelo,* 124 *App. Div.* 519; 108 *N. Y. Supp.* 975; 37 *C. J.* 46, § 385(c); 33 *Am. Jur.* 230, § 248.

All of paragraph 8 of the first separate defense, except the first and last subparagraphs thereof, will therefore be stricken as not setting forth a legal defense.

We come now to the second separate defense which is attacked as insufficient in law. It alleges that all statements of fact contained in the publication which is the subject of this litigation "were substantially true." Technically this is insufficient for the words complained of must be "true in substance and in fact" to constitute the defense of justification. *Odgers on Libel and Slander* (6th ed.) 518; *Schwarz Bros. Co.* v. *Evening News Publishing Co., supra* (at *p.* 489); 87 *Atl. Rep.* 148. The form of such a plea is given in *Bullen & Leake* (at *p.* 840), and in *Odgers* (at *p.* 647, *form* 40).

The second separate defense will therefore be stricken as insufficient in law. This ruling, however, does not deprive the defendants of a plea of justification, for the third separate defense alleges that the words complained of "were true," and this pleading is not attacked on this motion.

The fourth, seventh and fourteenth separate defenses plead privilege, and, since that presents the most interesting and important question presently before us, and merits more extended treatment, it is convenient to defer consideration thereof until after the other questions arising on his motion have been disposed of.

The sixth separate defense avers that "All comment and criticism made or published by the defendants," as grand jurors, "concerning the conduct of the plaintiff," as a prosecuting attorney, "were fair and *bona fide* comment and criticism," of such conduct. This pleading is attacked as insufficient in law.

Matters of public interest and concern, such as the public acts of a public man, are legitimate subjects of criticism, and everyone has the right to comment thereon so long as he does so fairly and without malice. However, what is thus privileged, if we may use that term, is the comment and criticism, and not the statements of fact on which they are based. So if the latter are not true the former are not privileged. *Schwarz Bros. Co.* v. *Evening News Publishing Co.*, supra (at *pp.* 494-496); 87 *Atl. Rep.* 148. *Lindsey* v. *Evening Journal Association*, 10 *N. J. Mis. R.* 1275, 1280; 163 *Atl. Rep.* 245; *Burnham* v. *Hornaday*, 130 *Misc.* 207; 223 *N. Y. Supp.* 750, 762.

Therefore, where the communication contains both statements of fact and comment thereon, it is necessary to aver the truth of the former in order to support a plea of the latter. *Foley* v. *Press Publishing Co.*, 226 *App. Div.* 535; 235 *N. Y. Supp.* 340, 350; *Cohalan* v. *New York World-Telegram Corp.*, 172 *Misc.* 1061; 16 *N. Y. S.* (2d) 706, 710.

The publication here complained of consists, in part at least, of statements of fact—charges of official misconduct—and this pleading does not aver the truth thereof in support of the privilege claimed for any comment thereon. It should have been pleaded, in effect, that the allegations of fact in the document in question are true and of public interest, and that the comments thereon are fair and made without malice. The allegation of truth under such circumstances is confined to the facts averred, and the averment as to the

comments is not that they are true but only that they are made in good faith and do not exceed the proper standards of criticism and comment upon such matters. This is not setting up two defenses in one plea—justification and fair comment—for the averment of truth is merely to lay the necessary basis for the defense on the ground of fair comment, since the latter depends upon the former. Under such circumstances only the defense of fair comment is thus pleaded. *Foley* v. *Press Publishing Co.* and *Cohalan* v. *New York World-Telegram Corp., supra.*

The sixth separate defense, in its present form, does not set forth a legal defense, and will be stricken for that reason.

The eighth, ninth and tenth separate defenses in alleging that this action is against public policy and that the sole remedy is in the court in charge of the grand jury, are only pleading conclusions of law, and, as such, they are not admitted by this motion. *Koewing* v. *West Orange,* 89 *N. J. L.* 539, 540; 99 *Atl. Rep.* 203; *Marples* v. *Standard Oil Co.,* 71 *N. J. L.* 352, 353; 59 *Atl. Rep.* 32. They will therefore be stricken as not stating legal defenses. The substance of the pleas of public policy (eighth and ninth separate defenses) is covered by the defense of privilege appearing elsewhere in the answer.

The twelfth separate defense alleges that "The statements and presentment concerning the plaintiff, made by the defendants" as members of the grand jury, "were not intended to mean and were not reasonably understood to mean the innuendos alleged by the plaintiff."

This attempts to put in issue the defamatory sense of the words complained of, but the defendants' "intention" with respect thereto is not a proper element of such a defense. This pleading will therefore be stricken as frivolous. The proper form for such a plea is indicated in *Schwarz Bros. Co.* v. *Evening News Publishing Co., supra* (at *p.* 489); 87 *Atl. Rep.* 148.

This brings us to the supplemental answer filed by permission of the court as hereinbefore mentioned. It consists only of an "objection in point of law" pursuant to rule 40. The point thus reserved is that the present action is pre-

mature for the reason that the document in question, having been presented to and accepted by the Judge of the Court of Quarter Sessions of Hudson County, is a judicial record of that court, and until it is stricken as such, the plaintiffs cannot maintain any action against these defendants in respect to or arising out of the same.

The plaintiffs now move to "strike" this reserved point as though included within the scope of their original motion.

The reservation of a point of law under rule 40 is analogous to a demurrer at common law and not an affirmative defense. *Cf. Koewing* v. *West Orange*, 89 *N. J. L.* 539, 540; 99 *Atl. Rep.* 203. And it has been held that a motion to strike out the causes of demurrer is not recognized in our practice. *French* v. *Armstrong*, 80 *N. J. L.* 152; 76 *Atl. Rep.* 336. The proper practice, with respect to such a reservation, as indicated by rule 40, is to move the court to "determine the question so raised before trial," and not to "strike" the reservation as in the case of an affirmative defense.

Plaintiffs' said motion will therefore be denied without prejudice.

There remain for consideration the fourth, seventh and fourteenth separate defenses which attempt to set up, in different ways, that the words complained of were published by the defendants as members of the grand jury under circumstances which rendered them "privileged."

The plaintiffs move to strike these pleadings generally as failing to set forth any defense sufficient in law, and specifically that the type of privilege, whether absolute or qualified, is not designated therein by either of said terms.

While it is necessary, of course, that a special plea of privilege shall contain facts sufficient to show that the publication was made on a privileged occasion, nevertheless it is not essential to such a plea that the word "privilege" be used therein, for this is but a legal conclusion from the facts stated. *Salinger* v. *Cowles*, 195 *Iowa* 873; 191 *N. W. Rep.* 167, 173; 37 *C. J.* 46, § 385. It follows, for the same reason, that the type of privilege claimed need not be stated since this would appear from the pleaded facts. An indicia of the type of privilege involved is to be found also in the circumstance

of whether lack of malice in the publication is alleged. An allegation of lack of malice is necessary, under our Practice Act, in a special plea of qualified privilege, but not in a plea of absolute privilege, where the protection arises because of the privileged occasion of the publication regardless of malice. 37 *C. J.* 46, § 385; *Lapetina* v. *Santangelo*, 124 *App. Div.* 519; 108 *N. Y. Supp.* 975, 977. *Cf. Shaw* v. *Bender*, 90 *N. J. L.* 147, 151; 100 *Atl. Rep.* 196. It doubtless would be better in such pleading to use the word "privilege" and specify the kind, but the necessary matters to be proven, and therefore pleaded, are the essential facts showing a privilge, *Salinger* v. *Cowles, supra,* and in the case of a qualified privilege, that publication was without malice.

These particular defenses each use the word "privilege," lack of malice is not alleged, and the pleaded facts otherwise indicate that if a technical privilege is claimed, it is an absolute one. Therefore these pleadings cannot be stricken on the ground we have been considering.

We conclude, however, that the fourth and seventh separate defenses must be stricken for other technical reasons of pleading.

The fourth separate defense alleges that "At the times mentioned in the presentment" the plaintiffs were the prosecuting officers of Hudson County and their conduct as such "was one of public interest and concern and this presentment complained of and made by the defendants, as members of the December, 1944 Grand Inquest, to the Court, were privileged."

Preliminarily it must be noticed that the defense of fair and *bona fide* comment upon and criticism of matters of public interest and concern and the defense of privilege are not identical—they are separate and distinct. In the latter case the words may be defamatory, but the defamation is excused, by reason of the special occasion, on grounds of public policy, while in the former case the comment and criticism are not privileged by reason of the occasion in the strict legal sense. What is really meant is that such comment and criticism, if fair, made in good faith and founded on fact, are not defamation of the plaintiff, and hence not

libelous—the stricture or criticism is not upon the person himself, but upon his work. *Schwarz Bros. Co.* v. *Evening News Publishing Co., supra* (at *p.* 495); 87 *Atl. Rep.* 148; *Merrey* v. *Guardian Publishing Co.,* 79 *N. J. L.* 177 (at *p. p.* 184); 74 *Atl. Rep.* 464 (reversed on other grounds in 81 *N. J. L.* 632; 80 *Atl. Rep.* 331); *Burnham* v. *Hornaday,* 130 *Misc.* 207; 223 *N. Y. Supp.* 750, 762; *Newell, S. & L.* (*4th ed.*) 519.

Therefore, if we view this fourth separate defense as a plea of fair and *bona fide* comment and criticism, it is legally defective for failing to aver that the words complained of were of such a character, and also for the reasons hereinbefore stated in considering the legal validity of the sixth separate defense which specifically attempts to assert such a plea.

On the other hand, if we view this fourth separate defense as a plea of privilege, then, since it is not alleged that the publication was without malice, we must assume that an absolute privilege is claimed.

As such it is insufficient because, while it is asserted that the document in question was presented to the court by the defendants "as members" of the grand jury, it is not alleged, nor does it appear, that the subject-matter thereof, as set forth in the complaint, was ever officially before them, or was the result of their official investigation or action, or even of their own knowledge. It does not appear from this pleading that the document was the result of a judicial act in the course of a judicial proceeding so as to invoke the defense of absolute privilege. In this connection it should be stated that defendants' answer nowhere incorporates a copy of the document in question or any part thereof, and the complaint sets forth only that portion thereof above quoted, and a complete copy is not otherwise before the court by any competent proof. Furthermore this fourth separate defense makes no reference to any other part of the answer and hence cannot be aided by any averments therein. *Brooks* v. *Metropolitan Life Insurance Co.,* 70 *N. J. L.* 36, 39; 56 *Atl. Rep.* 168; *Gross* v. *New York Central Railroad Co.,* 99 *N. J. L.* 414, 416; 125 *Atl. Rep.* 110.

The seventh separate defense alleges, in effect, that certain

specified conduct of the plaintiffs, as prosecuting officers of Hudson County, in the case hereinbefore mentioned, was believed by the defendants, as grand jurors, not to have been in accordance with the proper administration of the offices so held by the plaintiffs, and, acting upon such belief, the defendants made the statements complained, which "did not and were not intended or mean to slander, libel or defame the [plaintiffs] and were, in fact, privileged."

In the absence of an allegation of lack of malice, this also must be considered as a plea of absolute privilege, and as such it is defective for the reasons last above stated in considering the sufficiency of the fourth separate defense as a plea of absolute privilege. It is also incompetent, as such a plea, because it does not allege when and under what circumstances the actual publication in question was made, and this deficiency is not supplied by reference to any other part of the answer. So it cannot be determined whether it was made on a privileged occasion, which is essential to such a defense, particularly as the complaint lends no aid in that respect. It is not alleged, in this defense, that the document was presented to the court, and, so far as appears, it may have been published by the defendants in a newspaper. Whatever may be said about the legal authority of a grand jury to present such matters as herein complained of directly to the court, it cannot be doubted that its publication otherwise than in court would not be accorded an absolute privilege.

The fourth and seventh separate defenses will therefore be stricken as frivolous.

We come now to the fourteenth separate defense which also pleads an absolute privilege. It is based upon the assertion that the defendants, acting officially as a grand jury, presented the document in question to the court as the result of an official investigation into a charge that the plaintiffs, as prosecuting officers, had suppressed or concealed evidence in their possession indicating the innocence of the accused in certain criminal proceedings which the plaintiffs had been conducting against him. And in which investigation by the grand jury the plaintiffs had appeared and been sworn as witnesses.

The plaintiffs attack this pleading on the ground that it does not set forth any defense sufficient in law. They contend that the defendants, as grand jurors, acted without legal authority in presenting or reporting such matters to the court, reflecting unfavorably on the official conduct of the plaintiffs, without indicting them or resulting in their indictment. From this it is argued that such action, being without authority of law, was not a judicial act, and, therefore, the statements involved therein are not entitled to the absolute privilege accorded by law to pertinent statements made in the course of judicial proceedings, and the defendants are not immune from civil liability for their publication. This presents the most important and interesting legal question in the case.

In this state the grand jury system is a creature of the common law and there are no statutes respecting the power and authority of a grand jury except *R. S.* 40:189–1, *N. J. S. A.* 40:189–1, pertaining to the investigation, presentment and abatement of nuisances in the condition of buildings in cities, and *R. S.* 40:32–4; *N. J. S. A.* 40:32–4, pertaining to the investigation and presentment of improper construction of county buildings, neither of which is pertinent here.

The grand jury, at common law, is an arm of the court and acts for the court under which it is organized, and its proceedings are regarded as proceedings in the court. *In re Schwartz,* 133 *N. J. L.* 79, 84–85; 42 *Atl. Rep.* (*2d*) 564 (see cases cited). Its members are officers of the court and exercise functions of a judicial nature and its proceedings are judicial within the meaning and operation of the law of privilege. *Yates* v. *Lansing,* 5 *John* (*N. Y.*) 282, 292; *State* v. *Burney,* 229 *Mo. App.* 759; 84 *S. W. Rep.* (*2d*) 659, 664; *Yaselli* v. *Goff,* 12 *Fed. Rep.* (*2d*) 396, 403; 56 *A. L. R.* 1239; *affirmed,* 275 *U. S.* 503; 48 *S. Ct.* 155; *Sweet* v. *Post Publishing Co.,* 215 *Mass.* 450; 102 *N. E. Rep.* 660, 661; 47 *L. R. A.* (*N. S.*) 240, 243; *Irwin* v. *Murphy,* 129 *Cal. App.* 713; 19 *Pac. Rep.* (*2d*) 292, 293; *Williams* v. *Journal Co.,* 211 *Wis.* 362; 247 *N. W. Rep.* 435; 33 *Am. Jur.* 144, § 148; *Anno.* 104 *A. L. R.* 1125, 1126. It naturally follows that they are entitled to the same legal

privileges and immunities with respect to their judicial acts as the judge of the court of which they are a part. *Yates* v. *Lansing, supra; Turpen* v. *Booth,* 56 *Cal.* 65; 38 *Am. Rep.* 48; *Yaselli* v. *Goff, supra* (at *p.* 403) ; *Phelps* v. *Dawson,* 97 *Fed. Rep.* (*2d*) 339, 340; *L. R. A.* 1915E, 1055, *note; Griffith* v. *Slinkard,* 146 *Ind.* 117; 44 *N. E. Rep.* 1001, 1002.

It is settled by the great weight of authority, on considerations of public policy, that all officers exercising judicial functions are absolutely privileged in what they speak, write or do in the performance of their judicial acts, at least where such statements are relevant and pertinent to the matter before them. Such acts are judicial acts and cannot form the basis for money damages, if the officer had jurisdiction of the parties and jurisdiction or color of jurisdiction of the subject-matter, even though in exercising such jurisdiction he acts erroneously, illegally, irregularly or in excess of jurisdiction, and such acts are alleged to have been done maliciously and corruptly. *Grove* v. *Van Duyn,* 44 *N. J. L.* 654; *Valentine* v. *Englewood,* 76 *N. J. L.* 509, 517; 71 *Atl. Rep.* 344; *Taylor* v. *Doremus,* 16 *N. J. L.* 473, 476, 477; *Mangold* v. *Thorpe,* 33 *Id.* 134, 136; *State* v. *Sheriff of Middlesex,* 15 *Id.* 68, 70; *Austin* v. *Vrooman.* 128 *N. Y.* 229; 28 *N. E. Rep.* 477; 14 *L. R. A.* 138; *Mundy* v. *McDonald,* 216 *Mich.* 444; 185 *N. W. Rep.* 877; 20 *A. L. R.* (*Anno.*) 398; *Houghton* v. *Humphries,* 85 *Wash.* 50; 147 *Pac. Rep.* 641; *L. R. A.* 1915E, 1051 (see note) ; *Valesh* v. *Prince,* 94 *Misc.* 479; 159 *N. Y. Supp.* 598; *Yaselli* v. *Goff, supra; Bradley* v. *Fisher,* 13 *Wall.* (80 *U. S.*) 335, 352; *Alzua* v. *Johnson,* 231 *U. S.* 106, 111; 34 *S. Ct.* 27; *Lange* v. *Benedict,* 73 *N. Y.* 12, 25; *Yates* v. *Lansing, supra; Pratt* v. *Gardner,* 2 *Cush.* 63; 48 *Am. Dec.* 652; *Spalding* v. *Vilas,* 161 *U. S.* 483; 16 *S. Ct.* 631; *Allard* v. *Estes,* 292 *Mass.* 187; 197 *N. E. Rep.* 884, 889; *Case* v. *Bush,* 93 *Conn.* 550; 106 *Atl. Rep.* 822; *Rush* v. *Buckley,* 100 *Me.* 322; 61 *Atl. Rep.* 774, 778; 33 *C. J.* 982; 15 *R. C. L.* 549, § 33.

The underlying reason for this rule of privilege is not the judicial character of the officer but the judicial character of the act, and the public necessity that public agents engaged

in the performance of a public duty under compulsion of law, should not suffer personally in performing a judicial act for an error of judgment which the wisest and most circumspect cannot avoid. *Valentine* v. *Englewood, supra* (at *p.* 517); 71 *Atl. Rep.* 344.

Jurisdiction, as here employed, means judicial power to hear and determine a matter, not the manner, method nor correctness of the exercise of that power. *The State* v. *Sheriff of Middlesex, supra* (at *p.* 70); *Grove* v. *Van Duyn, supra* (at *p.* 657); *Bradley* v. *Fisher, supra.* While a judicial act, or act of a judicial nature, means the actual exercise of this judicial power in the process of reaching a decision or conclusion in a particular matter. *Bradley* v. *Fisher, supra.*

All of the authorities hereinabove cited on this phase of the case clearly show that the importance of this distinction between jurisdiction and the exercise of it, so far as here pertinent, lies in the fact that, if the judicial officer does not have jurisdiction of the parties, or the case is not of a class of which he may have a jurisdiction, or there is not color of jurisdiction, any judgment he may render, or decision he may make therein, is void and judicial privilege cannot be claimed for his conduct therein because he never acquired legal authority to hear and determine the matter, and therefore it was not a judicial proceeding and his acts were not judicial acts. But if he has such jurisdiction or color of jurisdiction he is not personally liable for his acts in exercising it even though he acts erroneously, illegally or irregularly, nor is he liable if he acts maliciously, corruptly or negligently, or through ignorance or mistake of law or fact.

In *Bradley* v. *Fisher, supra,* Mr. Justice Field points out that (at *p.* 351), "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction" and he goes on to say that (at *p.* 352) "where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgment may depend."

In *Grove* v. *Van Duyn, supra,* our Court of Errors and Appeals was dealing with the rule applicable to the inception of jurisdiction when facts having color of legal value to invoke it were presented but where legal jurisdiction did not actually exist. In the course of the opinion, Chief Justice Beasley said (at *p.* 659) : "The assertion, I think, may be safely made, that the great weight of judicial opinion is in opposition to the theory that if a judge, as a matter of law and fact, has not jurisdiction over the particular case, that thereby, in all cases, he incurs the liability to be sued by any one injuriously affected by his assumption of cognizance over it. The doctrine that an officer having general powers of judicature, must, at his peril, pass upon the question, which is often one difficult of solution, whether the facts before him place the given case under his cognizance, is as unreasonable as it is impolitic." \* \* \* (at *p.* 660) : "Where the judge is called upon by the facts before him to decide whether his authority extends over the matter, such an act is a judicial act, and such officer is not liable in a suit to the person affected by his decision, whether such decision be right or wrong. But when no facts are present, or only such facts as have neither legal value or color of legal value in the affair, then, in that event, for the magistrate to take jurisdiction is not, in any manner, the performance of a judicial act, but simply the commission of an unofficial wrong. This criterion seems a reasonable one; it protects a judge against the consequences of every error of judgment, but it leaves him answerable for the commission of wrong that is practically willful; such protection is necessary to the independence and usefulness of the judicial officer, and such responsibility is important to guard the citizen against official oppression." In other words there must be a clear absence of all jurisdiction before the conduct of an officer clothed with judicial power ceases to be a judicial act and civil liability attaches.

In *Valentine* v. *Englewood, supra,* the court in passing upon immunity from suit of public health officers who had, in the exercise of their judicial functions, erroneously declared a quarantine, said (at *p.* 517) : "It is enough if the matter is colorably, though not really within their jurisdiction."

By the great weight of precedent, at common law, a grand jury has plenary inquisitorial powers, and may without instruction or authority from the court, and without complaint made before it, and of its own initiative investigate and diligently inquire into all alleged offenses against the criminal law regardless of how the information on which it acts is brought to its attention. The broad scope of its powers is further indicated by the terms of the common law oath which is administered to its members at the beginning of their term of service. *United States* v. *Thompson,* 251 *U. S.* 407; 40 *S. Ct.* 289; *Hale* v. *Henkel,* 201 *U. S.* 43, 62; 26 *S. Ct.* 370; *Frisbie* v. *United States,* 157 *U. S.* 160; 15 *S. Ct.* 586; *People* v. *Graydon,* 333 *Ill.* 429; 164 *N. E. Rep.* 832, 834; *People* v. *Conzo,* 301 *Ill. App.* 524; 23 *N. E. Rep.* (2d) 210, 213; *Hitzelberger* v. *State,* 173 *Md.* 435; 196 *Atl. Rep.* 288, 290; *Coblentz* v. *State,* 164 *Md.* 558; 166 *Atl. Rep.* 45; *In re Julius Grunow,* 84 *N. J. L.* 235, 237; 85 *Atl. Rep.* 1011. It may initiate an investigation based on its suspicion that crimes have been committed without any knowledge of the manner or description of the crimes or persons who may be involved, *Hale* v. *Henkel, supra; In re Grand Jury Proceedings,* 4 *Fed. Supp.* 283; *United States* v. *McGovern,* 1 *Fed. Supp.* 568, and without the necessity for a previous charge against anyone, *In re National Window Glass Workers,* 287 *Fed. Rep.* 219. The scope of its inquiries are not to be limited narrowly by questions of propriety or forecasts of the probable results of the investigation, or by doubts as to whether any particular individual will be found properly subject to accusation of crime. The identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's efforts, not at the beginning. *Blair* v. *United States,* 250 *U. S.* 273; 39 *S. Ct.* 468; *Hendricks* v. *United States,* 223 *U. S.* 178, 184; 32 *S. Ct.* 313; *Hale* v. *Henkel, supra; People* v. *John Doe,* 247 *App. Div.* 324; 286 *N. Y. Supp.* 343; *affirmed,* 272 *N. Y.* 473; 3 *N. E. Rep.* (2d) 875.

At common law a prosecuting attorney may be indicted and punished for willful or fraudulent misconduct in office— malfeasance. *State* v. *Jefferson,* 88 *N. J. L.* 447; 97 *Atl.*

*Rep.* 162; *affirmed,* 90 *N. J. L.* 507; 101 *Atl. Rep.* 569; 27 *C. J. S.* 410, § 17.

The pleading now being considered avers, *inter alia,* that "At the times mentioned in the complaint the defendants," as grand jurors, "were inquiring and investigating into a charge before them as to the conduct of the plaintiff," as a prosecuting officer, "in the indictment and conviction of John R. Longo for the crime of forgery * * * it having been charged against the plaintiff that he had suppressed or concealed evidence in his possession, indicating the innocence of the said John R. Longo * * *."

The foregoing is admitted by reason of the form and for the purpose of the plaintiffs' present motion. The defendants were thus confronted with a charge against the plaintiffs, at least suggestive of criminality, where the exercise of their inquisitorial powers might disclose the presence of a willful and fraudulent purpose to subvert justice, or the existence of a conspiracy to that end, or possibly the perpetration of a fraud upon the court, which would justify an accusation of malfeasance in office. *Cf. State* v. *Longo,* 134 *N. J. L.* 347, 348; 48 *Atl. Rep.* (2*d*) 853. The charge was not concerning the general conduct of a public office, nor the personal conduct of a private person, nor does the investigation which ensued appear to have been a general one in the nature of a "fishing expedition." Both the charge and the investigation apparently were confined to a single instance or case of alleged official misconduct.

It thus appears that the defendants, as grand jurors, had jurisdiction to undertake an investigation of the matter thus called to their attention. In any event they were required by the very nature of the charge before them to decide whether it called for the exercise of their inquisitorial powers and this was essentially a judicial act, so far at least as the inception of jurisdiction is concerned, and therefore entitled the defendants to all the privileges and immunities surrounding such acts.

Having thus disposed of the question of inception of jurisdiction—the authority to investigate, to hear the matter—it naturally follows, in the absence of clear legal restrictions to

the contrary, that the defendants had the further authority to reach a conclusion with respect thereto—the right to determine the course to be pursued with respect to the disclosures resulting from such investigation. This likewise would be a judicial act, which, if erroneously exercised, would be an error of judgment and would not detract from the judicial character of the act within the doctrine of *Grove* v. *Van Duyn, Valentine* v. *Englewood* and *Bradley* v. *Fisher, supra.* See, also, *Austin* v. *Vrooman, supra,* where the principle involved is thoroughly and forcefully presented.

However we will proceed to the further consideration of this latter question. In so doing it must be noted that the complaint herein avers that the words complained of charge the plaintiffs with having "committed the misdemeanor of misconduct in office," *i. e.,* a criminal offense, and also with unethical conduct in the performance of their official duties, not amounting to a crime. In either aspect, however, the plaintiffs insist that the grand jury had no lawful authority to report its findings to the court otherwise than by indictment.

The publication complained of is referred to indiscriminately in the pleadings and briefs as a "presentment" or "report," and it is conceded that it is not an indictment. At common law an indictment originates at the instance of the state (the public prosecutor) and is formal in character, while a presentment is an informal accusation made by the jurors on their own knowledge, or upon the evidence before them, without having any formal bill from the public prosecutor. It is generally regarded in the light of instructions to the prosecuting officer upon which a true bill of indictment can be framed. The presentment merges in the indictment. If no indictment is found, the presentment ceases to exist for any purpose. *In re Funston,* 133 *Misc.* 620; 233 *N. Y. S.* 81, 83; *In re Gardiner,* 31 *Misc.* 364; 64 *N. Y. S.* 760, 761-762; 33 *Words and Phrases* (*Perm. ed.*) 459. If the prosecuting officer frames an indictment it is not necessary to refer it back to the grand jury. *Nunn* v. *State,* 1 *Ga.* 245; 1 *Chitty's Crim. Law,* 134 *star p.* 163.

In the United States it has been the usage for the court

to pass over presentments which the prosecuting attorney ignores and upon which he does not see fit to prepare an indictment. 17 *Am. & Eng. Encycl. Law* (*.2d*) 1280; *United States* v. *Hill,* 1 *Brock* (*U. S.*), 156; 26 *Fed. Cas. No.* 15, 364; 1 *Chitty's Crim. Law,* 134, *star p.* 163.

While it is true that the foregoing practice has fallen into disuse because it is now the duty of the prosecuting attorneys to attend grand juries and advise them in their investigations, nevertheless the practice is still recognized and sanctioned by the Constitution of New Jersey which provides in article 1, paragraph 9, *N. J. S. A.,* that "No person·shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, * * *." It is further recognized in *R. S.* 2:178–12; *N. J. S. A.* 2:178–12, which provides that "* * * when the grand jury, * * *, desires to present any indictment or make any presentment, or to be discharged, the court of quarter sessions * * * may receive such indictments or presentments * * *."

While the pleadings herein do not set forth the whole of the document complained of, and it is not otherwise before us in its entirety by any competent proof, nevertheless the part thereof which is quoted in the complaint appears to be, in part at least, an informal accusation of misconduct in office of a public official. And if viewed as a presentment, then whether it technically charges a crime or not, it would seem that under the common law practice still sanctioned in New Jersey, the members of the grand jury in composing and presenting it to the court were performing a judicial act, and, therefore, the statements therein would be absolutely privileged under the authorities hereinabove cited. That an indictment did not follow would not, under such circumstances, detract from the document as a judicial act but would merely involve the manner and extent of exercising jurisdiction, which, if erroneous would not incur liability.

However, assuming, without deciding, that the document in question is not a true presentment but merely a report to the court of the grand jury's findings or conclusions with no thought or purpose of procuring an indictment, the result would be the same so far as the protection of privilege is

concerned, because in composing and presenting it to the court the jurors were performing judicial acts in a judicial proceeding. *Cf. Mundy* v. *McDonald, supra,* 216 *Mich.* 444; 185 *N. W. Rep.* 877; 20 *A. L. R. (Anno.)* 398.

Many cases have been cited by the parties to support their conflicting contentions with respect to the authority of grand jurors to make reports or presentments reflecting upon the official acts of public officers without indicting them. Most of these cases, however, concern applications by the aggrieved parties to expunge such documents from the files of the courts to which they were returned.

For instance, in *Bennett* v. *Kalamazoo Circuit Judge,* 183 *Mich.* 200; 150 *N. W. Rep.* 141; *Ann. Cas.,* 1916E, 223; *In re Osborne,* 68 *Misc.* 597; 125 *N. Y. Supp.* 313; *In re Wilcox,* 153 *Misc.* 761; 276 *N. Y. S.* 117; *In re Funston,* 133 *Misc.* 620; 233 *N. Y. S.* 81; *Ex parte Robinson,* 231 *Ala.* 503; 165 *So. Rep.* 582, and *In re Report of Grand Jury,* 152 *Md.* 616; 137 *Atl. Rep.* 370, cited by the plaintiffs, the presentments or reports were expunged as being either without or in excess of authority. While in *In re Grand Jury,* 152 *Fla.* 154; 11 *So. Rep.* (2d) 316; *Jones* v. *People,* 101 *App. Div.* 55; 92 *N. Y. S.* 275, and in *Application of Knight,* 176 *Misc.* 635; 28 *N. Y. S.* (2d) 353, cited by the defendants, the courts refused to expunge such reports, holding that the jurors were not exceeding their jurisdiction in making them. In *Irwin* v. *Murphy,* 129 *Cal. App.* 713; 19 *Pac. Rep.* (2d) 292, although it was a suit for libel and not to expunge a report, the court expressly held that in making such a report the grand jury was acting within its jurisdiction. See, also, *In re Healy,* 161 *Misc.* 582; 293 *N. Y. Supp.* 584, approving *Jones* v. *People, supra,* so far as the validity of such reports concerning public officials, as distinguished from private persons, are concerned, but expunging because the particular report was of the latter character. See, also, *People* v. *Doe,* 176 *Misc.* 943; 29 *N. Y. S.* (2d) 648.

It will be noted that New York cases are cited on both sides of the foregoing proposition, but *In re Jones, supra,* is the only one decided by an appellate court of that state and, therefore, in that jurisdiction, the law must be considered as

favoring the validity of such reports concerning the alleged misconduct of public officials. It may be added that in New York the authority of grand juries is controlled by the *Code of Criminal Procedure,* where *Part* 4, *tit.* 4, § 260, provides, *inter alia,* that "The grand jury must inquire: * * * (2) Into the willful and corrupt misconduct in office of public officials * * *." But no provision is made for the return of reports of their investigations where no indictments are found. So, with respect thereto, the legal situation is the same as where the grand jury system is the creature of and controlled by the common law.

Cases where such documents were expunged, however, are not in point on the question now before us, proceeding, as they do, on grounds not controlling in the present case. In deciding them the courts were not required to determine whether civil liability would attach to the jurors responsible for the statements in the documents thus expunged. The only problem before them was whether jurisdiction actually existed or had been exceeded. The question of the existence of color of jurisdiction was not involved in nor necessary to be considered in their disposition as it is in the case *sub judice* where its presence would make the presentment of the document in question a judicial act, and, therefore, entitled to an absolute privilege as such.

However the conflict in the foregoing authorities dealing with expunctions does have a definite bearing on the question before us, because it clearly and conclusively demonstrates at least the existence of colorable jurisdiction to investigate and report the matters in question. It appears, according to the averments in this pleading, that, in exercising their legitimate inquisitorial powers, these jurors were confronted with a state of facts which required them to decide whether they had lawful authority to proceed further in the matter and, if so, the manner and extent of such procedure. The decision depended upon their interpretation of their common law authority, which, in view of the conflict in the aforesaid cases with respect thereto, was unsettled, and also of novel impression in this state.

It seems plain, therefore, that their decision to proceed in

the manner and to the extent which they did was properly a judicial act, and any error in deciding it was an error of judgment on a question of law for which the defendants are not civilly liable, and that the statements made in the course thereof, being relevant and pertinent to the subject-matter of the investigation, are absolutely privileged. To hold otherwise, in view of the allegations of this pleading, would be equivalent to saying that grand jurors, who serve by compulsion of law and not of their own volition, must decide doubtful questions concerning their jurisdiction at their peril, upon which questions even the courts have been unable to agree.

In *Austin* v. *Vrooman, supra,* the court said: "Here in the course of proceedings which he was forced to institute, and in the case of one over whose person he has properly acquired jurisdiction, the justice is confronted with the necessity of deciding a question depending upon the construction to be given to a statute, and that question must be decided by him one way or the other before he can take another step in those proceedings which up to that moment have been legally and properly pending before him, * * *. It seems plain that his decision upon the question is one in the course of a proper exercise of the jurisdiction first committed to him, and that his error in deciding that he had jurisdiction to proceed was an error of judgment upon a question of law, and that he is therefore not responsible for such error in a civil action."

If this is so when jurisdiction is dependent upon the construction to be given to a statute, it cannot be otherwise where the question depends upon the interpretation of disputed principles of the common law.

It is a significant fact that, notwithstanding the number of cases dealing with expunctions of presentments and reports from the records of the courts for jurisdictional reasons, the diligence of counsel and the independent research of the court have revealed only six cases throughout the United States and England where libel suits were instituted against grand jurors, or agencies of the state exercising comparable powers, for making presentments or reports, reflecting upon official conduct, not followed by indictments.

In *Rector* v. *Smith,* 11 *Iowa* 302; *Rich* v. *Eason (Tex.),* 180 *S. W. Rep.* 303, and *Bennett* v. *Stockwell,* 197 *Mich.* 50; 163 *N. W. Rep.* 482, the right to maintain such an action was upheld. And in *Caruth* v. *Richeson,* '96 *Mo.* 186; 9 *S. W. Rep.* 633, the right to maintain such an action was not raised nor considered. While in *Mundy* v. *McDonald, supra* (judge acting in the capacity of a grand jury by statute), and in *Irwin* v. *Murphy, supra,* the right to such an action was denied.

However in the Rector and Rich cases the grand juries appear to have been purely statutory bodies, limited by such statutes to the returning of indictments only. Therefore they are not authoritative in the instant case because the reports there involved were in clear absence of all jurisdiction, and color of jurisdiction was not involved nor considered.

As already indicated, the Caruth case in Missouri is of no value here because the questions of privilege, color of jurisdiction, and judicial immunity were not raised nor considered, and the court was only called upon to determine whether the verdict in favor of the defendants was against the weight of the evidence.

The authority of the Bennett case was considerably weakened and confined, if not overruled, by the later case of *Mundy* v. *McDonald* in the same court which applied the rule of colorable jurisdiction in upholding a plea of absolute privilege. The reasoning in this later case is in harmony with the doctrine of the Grove and Valentine cases in our own state and is particularly applicable to the case *sub judice.*

There a judge, acting as a one man grand jury, pursuant to a Michigan statute, had filed with the clerk of the court a report of his investigation of the conduct of certain municipal officers in which he charged the mayor of the city with willful neglect of duty in failing to suppress vice, but stated that no reason was found for the issuance of criminal process, and, therefore, no indictments were returned. The mayor thereupon instituted a libel action against the judge, and on motion, in the nature of a demurrer, to strike the complaint, the demurrer was sustained and the complaint stricken.

This result was affirmed on appeal in a well reasoned opinion in the course of which the court said: "Under the foregoing authorities, it must be held that the composing of and filing in the clerk's office of the findings complained of as libelous were judicial acts requiring a decision on the part of the judge as to the proper course to be pursued. To hold that the acts were in excess of jurisdiction and, therefore for that reason subject the judge to private liability, is to say that courts and judges must decide questions of jurisdiction at their peril. Such a doctrine would, in a large measure destroy the independence of the judiciary and take away the immunity and privilege considered so essential and necessary to the proper and just administration of law."

In the sixth and last of the above mentioned libel suits, *Irwin* v. *Murphy*, the right to such an action was denied because the making of such a report was not considered in excess of jurisdiction.

While our own courts have not been confronted heretofore with libel suits of this unusual character, nevertheless we are committed to the doctrine of "colorable jurisdiction" and have gone to extreme lengths in applying its principles to the protection of officers exercising judicial functions—solely for reasons of public policy. Applying them now to the pleading in question, the conclusion is inescapable that the defendants, whether they erred or not in composing and presenting the document in question to the court, were, nevertheless, performing judicial acts in the course of a judicial proceeding. Consequently it must be held that the statements complained of are absolutely privileged and the defendants are immune from civil liability for their publication under the circumstances set forth in this pleading.

If the defendants, as grand jurors, erroneously assumed or exceeded jurisdiction in the matter, the plaintiffs may apply to the proper court to have the document expunged from its files. And if it be said that this is an inadequate remedy, the same could be said with equal force regarding an indictment which has been quashed for legal reasons, for the law furnishes no other remedy in such cases. It must be remembered that the ground on which the foregoing rule of privilege

rests is that, if such an action as this would lie, all officers exercising judicial functions would lose their independence, and that the absolute freedom of such officers is necessary for the proper administration of justice. This freedom of action is given by law to such officers, not for their own sake but for the sake of the public, and for the advancement of justice; that being free from civil liability they may be free in thought and independent in judgment as all who are called upon to administer justice ought to be.

For the reasons hereinabove expressed, the motion to strike the fourteenth separate defense is denied.

A form of order may be presented in accordance with the foregoing conclusions. The plaintiffs may amend the *ad damnum* clause in their respective complaints, and the defendants may have leave to amend the eighth paragraph of the first separate defense (or to plead the amendatory matter as a new and distinct separate defense) and also to amend the sixth, tenth and twelfth separate defenses in their respective answers, provided all such amendments are filed on or before November 25th, 1946.