SCHWARZ BROTHERS COMPANY v. EVENING NEWS PUBLISHING COMPANY ET AL.

Argued February 15, 1913—Decided June 9, 1913.

1. Rule 17 under the Practice act of 1912, in requiring in the pleadings a plain and concise statement of the facts and not of the evidence by which they are to be proved, means the facts to be put in issue and not all the facts surrounding the case.
2. In an action for libel, a defence that the complaint sets forth only a partial and an unfair statement of the publication, is open to the defendant under a general denial.
3. Fair comment upon facts is not libelous and requires no justification, but a newspaper is not justified in publishing falsehoods because they are believed to be true, even where the matter is one of public interest.

4. In an action for libel, the defendant may plead in mitigation of damages and not by way of denial of the right of action, its honest belief in the truth of the publication.

5. In an action for libel, where the plaintiff claims by reason of special damage to its business, the defendant may set up that the business is unlawful.

6. Isolated acts of violation of law in the conduct of a business do not show that the business is unlawful.

On motion to strike out answer.

Before Justice SWAYZE.

For the motion, *Merritt Lane.*

Opposed, *Alfred F. Skinner* and *Corwin Howell.*

The opinion of the court was delivered by

SWAYZE, J. This is an action for libel. The complaint contains four counts. To this the defendants have interposed an answer of forty-three typewritten pages. The counsel who drew the answer have shown commendable care in the somewhat delicate task of dealing with the practice under the new act of 1912 (*Pamph. L., p.* 377), but it is obvious that if that act requires or even permits such an answer as this, it will so far from simplifying pleadings, make them intolerably prolix. I think the statute does not require pleadings to be put in this form, and that models are to be found in Bullen & Leake's "Precedents of Pleadings," and in Odgers "On Libel and Slander," which state succinctly the defence intended to be made. The rules annexed to the statute require a plain and concise statement of the facts and not of the evidence by which they are to be proved. (Rule 17.) This is substantially the rule in common law pleading. By a statement of the facts is, of course, meant the facts to be put in issue and not all the facts surrounding the case. The rules are also careful to provide that unnecessary repetition, prolixity and any other violations of the rules of pleading are objectionable (Rule 25), and that pleadings must be direct, precise, specific and not argumentative. (Rule 33.) In short,

the object of the statute was to do away with the technicalities of common law pleading and require a plain, intelligible statement of the real point involved, and to do away with the blind method which had grown up by which, for example, under a plea of not guilty in an action for libel almost any defence could be interposed. I propose to examine the answer in this case in the light of these rules.

The defences in substance are:

*First.* That the four libels set forth in the four counts of the plaintiff's declaration are not an accurate statement of the publication made by the defendant; that portions only of the publication are selected and other portions are omitted which, perhaps, would explain or qualify what is set forth as libelous.

*Second.* That the words were not used in the defamatory sense imputed to them by the plaintiff.

*Third.* That the publication complained of was true in substance and fact.

*Fourth.* That the publication was privileged because it related to a matter of great public interest and was published in an honest belief of the truth of the statements.

*Fifth.* That the business conducted by the plaintiff and for injury to which damages were claimed, was unlawful.

1. With reference to the first defence, inasmuch as the claim of the defendant is that the complaint sets forth only a partial and an unfair statement of the publication, it is open to the defendant to interpose a general denial. If they are right, they did not publish the alleged libel. If, for instance, to paraphrase Lord Erskine's classical example, the publication had actually been that certain malevolent rascals had published the following statements of and concerning the plaintiff, no one would assert that the plaintiff could maintain an action for libel by averring and proving the statements without the preliminary averment that they were the statements of a malevolent rascal; if the plaintiff undertook to maintain his suit on such an incomplete statement, the defendant could well deny generally the publication. I think the same principle applies in any case where the complaint

does not fairly set forth the whole publication. This leads me to refuse to strike out the first defence.

2. The second defence is intended to put in issue the defamatory sense averred in the complaint. If it had merely said that the words and language in the complaint when read and considered in connection with all the other words and language published therewith, did not admit of the defamatory sense averred in the complaint, it would have been a good plea, but in its present form it is prolix and argumentative. It is also subject to a further objection. It avers that the words when read in connection with the text, whether taken in their natural sense or in the alleged defamatory sense averred in the complaint, do not constitute and are not a false, slanderous, malicious and defamatory libel. This is in the alternative and therefore objectionable, but if taken as equivalent to an averment that the words even in the alleged defamatory sense are not libelous, it is objectionable because it tenders an issue in law. It is only when the language may be libelous or not according as it may be construed that a jury question is presented. *Odgers* *94; 25 *Cyc.* 542. I have examined the complaint to determine whether the words if used in the alleged defamatory sense may be found by a jury to constitute an actionable libel. I think they may. The second defence is stricken out, but the defendant may plead anew within ten days.

3. The third defence is a long and prolix statement in narrative form, setting forth, among other things, communications from outside parties to outside parties derogatory to the plaintiff. The real defence appears only in the last two or three lines, where it is averred that according to the fair and ordinary meaning of the words and language as used in the newspaper in which the same were published the statements are true in substance and fact. This is the issuable fact. It is the ordinary plea of the truth of the charge. The form is given in *Bullen & Leake* (at *p.* 840), and in *Odgers* (at *p.* *641). The material particulars justifying the allegation that the publication was true in substance and fact are that diseased horses, unfit for food, were slaughtered for human

food by the plaintiff; that the flesh of horses that died otherwise than by slaughter, was pickled or corned into a product for human consumption; that the slaughtering of horses for human food was conducted by the plaintiff under unsanitary conditions, and with the same implements and in the same place where diseased animals were killed and cut up to be sent to the rendering tanks; that sales of horse meat for human food were habitually made without tagging them as horse meat; that shipments of pickled horse meat for use as food were made by the plaintiff to Holland, which were not in compliance with the laws of that country; that the horse meat so shipped was not slaughtered and prepared in compliance with the laws of this state, and that horse meat not properly tagged as such was sold in New York, contrary to the laws of that state. These averments are proper, but if such specifications are relied on, the specific occasions should be set forth in order to apprise the plaintiffs of the proof to be made. The rest of the defence is a mere narrative of what was done by certain public officials in the investigation of the business of the plaintiff. This is no part of a proper pleading, and some of it is highly objectionable, as containing statements of third parties. Repetition of libelous statements made by others is not justifiable. This defence must be stricken out, with leave to plead anew within ten days.

The fourth defence is the same as the third, except that it avers that the words were true in the alleged defamatory sense. The pleader seems thereby to take an unnecessary burden upon himself, since all he need do is to prove the truth of the words used; if true, they must be so for all purposes, and the defendant is justified although the words may have the defamatory sense put upon them in the complaint. This defence should be stricken out.

The fifth defence sets up specifically that the publication as set forth in the complaint is a garbled extract from the real publication. I see no reason why this defence should be specifically interposed, but it is not improper, and the only objection to it is that it is set forth with unnecessary prolixity. The material averment of this defence is that the words

quoted by the plaintiff were accompanied by other statements explanatory and necessary to the correct understanding thereof; that according to their fair and ordinary meaning as used in the newspaper when taken in their true order and context and in connection with the omitted words, the statements are true in substance and in fact. I will strike out this defence in order that a more concise statement may be made within ten days.

4. The sixth and seventh defences aver that the defendant had the right and privilege to describe the conditions of the plant of the plaintiff's and its methods of doing business, and to comment upon the same in the newspaper, and that it published the statements in the belief in their truth without malice and in good faith. The gist of the claim under these defences is that inasmuch as the plaintiff was engaged in a public business in which the public were interested, the newspaper had the right to publish such statements as it chose about it, whether true or false, provided the newspaper honestly believed them to be true. This raises a legal question. The sixth defence sets forth a right to describe the conditions at the plaintiff's place and the right to comment as if the two rights were the same. If the only meaning of the pleader is to aver that the newspaper had the right to comment upon admitted facts as to the condition of the plant and the method of doing business, it would be unobjectionable, for fair comment is not libelous at all and requires no justification. *Odgers* \*32; *Campbell* v. *Spottiswoode*, 3 *B. & S.* 769; *Davis* v. *Shepstone*, *L. R.*, 11 *App. Cas* 187; 55 *L. J. P. C.* 51; *Burt* v. *Advertiser Newspaper Co.*, 154 *Mass.* 238; other cases are collected in 25 *Cyc.* 401. The difficulty is that the publication was not mere comment upon admitted facts. Whether it was a statement of the conditions that prevailed at the plant of the plaintiff or not is the very point in controversy. If it was a description of the conditions that prevailed, it is covered by the plea that the publication was true in substance and in fact and the belief of the plaintiff makes no difference. But the evident object of the defence was to set up a privilege on the part of a public news-

paper to publish falsehoods with reference to a man's business if it believed them to be true. The question of privileged publications has been very thoroughly discussed in this state in the case of *King* v. *Paterson,* by Mr. Justice Depue, 20 *Vroom* 417. In that case a mercantile agency had sent out a report affecting the plaintiff's credit, to its subscribers. It came to the hands of two subscribers who were not creditors of the plaintiff nor in any way interested in his mercantile standing. In their hands it was seen by men who were creditors of the plaintiff, and who thereupon took proceedings which resulted in damage to the plaintiff for which he brought his action of libel. Justice Depue deals with the matter in his usual thorough way, with the result that the mercantile agency was held liable for the damages. He recognizes that communications in matters of public interest in which the public generally is concerned may come within the class of privileged communications, but he recognizes also the limitations upon this right; the important limitation is that the publication should not be made to those not specially and directly interested. He says: "The subject may be one that is privileged and a communication on that subject be unprivileged if the restraints and qualifications imposed by law upon the publicity to be given the communication be not observed. If such restraints and qualifications are disregarded, the communication is unprivileged and actionable, though made from the best of motives. In such cases good faith and honest belief will be no defence. The act of communicating defamatory matter to persons with respect to whom there is no privilege is an act without legal justification or excuse, and therefore actionable. No judicial precedent has ever treated good faith and honest belief, standing alone, as a justification of defamatory words." He quotes from Lord Selborne's opinion in *Capital and Counties Bank* v. *Henty & Sons, L. R., 7 App. Cas.* 741, with reference to the libel set forth in that case: "If it had been publicly placarded by the defendants, on the walls of Chichester or other towns, or had been advertised by them in newspapers or sent by them through the post to persons with whom they had no business

relations, this might have been evidence of a malicious intention, beyond what was expressed by the mere words of the document." He refers to *Williamson* v. *Freer, L. R., 9 C. P.* 393, where "the transmission unnecessarily by telegram of libellous matter, which would have been privileged if sent in a sealed letter, was held to void the privilege, although the post-office clerks through whose hands it would pass were prohibited under severe penalties from disclosing telegrams passing through their hands, the principle of the decision being that the publication was thus made to persons in respect to whom there was not any privilege." He sums up the law in these sentences: "The publication of defamatory matter affecting third persons, in a business prosecuted for personal gain, can be tolerated only on grounds of public convenience. The rights of individuals ought not to be made to yield to the exigencies of such a business more than public interests require. Public interests will be adequately conserved by extending the immunity of privileged communications only so far as to embrace communications to subscribers who have a special interest in the information." The law as thus stated by Justice Depue is well settled and recognized in all the authorities. As Mr. Odgers says (*Odgers* *201): "Confidential communications should not be shouted across the street for all passersby to hear. Nor should they be committed to a postcard or a telegram which others will read. They should be sent in a letter properly sealed and fastened. If the words be spoken the defendant must be careful in whose presence he speaks. He should choose a time when no one else is by, except those to whom it is his duty to make the statement." The difficulty with the plea of privilege by a newspaper is that from the very nature of its business, the communication cannot be limited to those who are specially interested therein. The special interest, in the very broadest sense of those words, must in this case be limited at least by the locality and extent of the plaintiff's trade. The newspaper publishes its statements to the whole world. Accordingly it has been held that where a newspaper falsely charged a police officer with extortion in purposely swelling the amount

of a prisoner's fine, collecting the sum of the prisoner's family to procure his discharge and pocketing the difference, the publishers were properly convicted of a criminal libel, even though the publication was made without malice or improper motives and for the dissemination of news and information to the citizens and municipality; those facts did not render the communication privileged. *Benton* v. *State,* 30 *Vroom* 551. Surely the publication of a charge of that character affecting a public officer in his public capacity is of as widespread public interest as the method by which the plaintiff conducts an abattoir in Harrison. An illustration of a privileged communication is afforded by the case of *Rotholz* v. *Dunkle,* 24 *Id.* 438, which was a communication made by the cashier of a bank to a stockholder with reference to the solvency of the plaintiff who was surety upon an official bond of the bank. Here there was the direct personal interest of the stockholder in having a solvent surety upon a bond given to the bank. There was no unnecessary spread of the charge. In *Kruse* v. *Rabe,* 51 *Id.* 378, the Court of Errors and Appeals went even further, for it sustained an action for slander, not libel, under circumstances where the communication would have been privileged if made to the lawyer's client alone, but was held not privileged because unnecessarily made in the presence of others. That newspapers have no special privilege which enables them with impunity to publish false statements of a man in his business, is well settled. A reference to the numerous cases in 25 *Cyc.* 405, 406, is sufficient. In *Davis* v. *Shepstone, L. R.,* 11 *App. Cas.* 187, a newspaper in Natal had published statements derogatory to a high government official in a matter affecting the relations of the British government with the Zulus. There could hardly be a case where freedom of speech was more important, yet Lord Herschell, speaking for the Privy Council, said: "There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism, not only by the press, but by all members of the public. But the distinction cannot be too clearly borne in mind between comment or criticism, and allegations of fact, such as that

disgraceful acts have been committed or discreditable language used. It is one thing to comment upon or criticise, even with severity, the acknowledged or proved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct." In *Haynes* v. *Clinton Printing Co.,* 169 *Mass.* 512, Mr. Justice Holmes said: "It is settled that newspapers as such have no peculiar privilege, and it is equally settled that the privilege of comment and criticism on matters of public interest which a possible murder may be assumed to be for the purposes of decision, does not extend to false statements." In *Burt* v. *Advertiser Newspaper Co.,* 154 *Id.* 238, 242, the same learned judge said in a case where the charges were of frauds in the New York Custom House: "We agree with the defendant that the subject was of public interest and that in connection with the administration of the customs the defendant would have a right to make fair comments on the conduct of private persons affecting that administration in the way alleged. But there is an important distinction to be noticed between the so-called privilege of fair criticism upon matters of public interest and the privilege existing in the case, for instance, of answers to inquiries about the character of a servant. In the latter case a *bona fide* statement, not in excess of the occasion, is privileged, although it turns out to be false. In the former what is privileged, if that is the proper term, is criticism, not statement; and however it might be if a person merely quoted or referred to a statement as made by others, and gave it no new sanction, if he takes upon himself in his own person to allege facts otherwise libelous, he will not be privileged if those facts are not true.

"The reason for the distinction lies in the different nature and degree of the exigency and of the damage in the two cases. In these, as in many other instances, the law has to draw a line between conflicting interests, both intrinsically meritorious. When private inquiries are made about a private person, a servant, for example, it is often impossible to answer them properly without stating facts, and those who settled the law thought it more important to preserve a reasonable freedom

in giving necessary information than to insure people against occasional unintended injustice, confined, as it generally is, to one or two persons. But what the interest of private citizens in public matters requires is freedom of discussion rather than of statement. Moreover, the statements about such matters which come before the courts are generally public statements, where the harm done by a falsehood is much greater than in the other case.

"If one private citizen wrote to another that a high official had taken a bribe, no one would think good faith a sufficient answer to an action. He stands no better, certainly, when he publishes his writing to the world through a newspaper, and the newspaper itself stands no better than the writer."

The sixth defence must be stricken out because it does not present any legal defence to the action.

The seventh defence is similar, except that it avers that the publications were based on the acts and reports of federal and state officials charged with the duty of protecting the public health and of detecting and punishing violations of law relating thereto. This raises a somewhat different question. It is settled that the publication of fair reports of judicial proceedings are absolutely privileged, as are fair reports of debates in legislative bodies, but even this exception to the general rule of liability for defamatory statements is of recent development and it has never been extended to reports of public officials, which, however privileged they may be when made to persons charged with the duty of enforcing the law, are not of such a character that they may be spread broadcast to the world upon the authority of a newspaper, without the newspaper being liable for damages in case the statements are false. *Burt* v. *Advertiser Newspaper Co., supra.* This defence must be stricken out.

Although the sixth and seventh defences present no defence to the action in point of law, and in their present form ought to be stricken out, the plaintiff is entitled to plead in mitigation of damages and not by way of denial of the right of action, its honest belief in the truth of the publications. Under the old pleading, I should think it unnecessary to

plead in mitigation of damages; such a plea would not answer the action, since the plaintiff in any event if entitled to recover would be entitled to nominal damages at least. The object of the new Practice act and rules is not to produce a single issue but to permit as many issues as may fairly be involved in the case and to apprise the opposite party of the defence intended to be made. Mr. Odgers thinks that under the new practice in England a plea in mitigation of damages is probably required. *Odgers* *542, citing *Scott* v. *Sampson,* 51 *L. J. Q. B.* 380. I see no harm that can come to the plaintiff from allowing the defendant to apprise him in advance that an attempt will be made to mitigate the damages, and it may be important to the defendant in a jurisdiction where as in New Jersey punitive damages are permitted. In that respect our rule differs from the rule in Massachusetts. and evidence that would be rejected there is admissible here. *Burt* v. *Advertiser Newspaper Co., supra.* I, therefore, permit a plea setting up in mitigation of damages that the defendant honestly believed in the truth of the publication. It ought not to set forth the evidence upon which that belief was based.

5. The eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth defences of the original answer, and the fifteenth and sixteenth defences of the amended answer, rely upon the charge that the plaintiff's business was unlawful. Since the plaintiff claims by reason of special damage to its business, the defendant may set up that the business was unlawful. Certainly the law cannot permit the recovery of damages for injury to an unlawful business. But an unlawful business is one that is necessarily unlawful, not one in which occasional illegal acts take place. The publication of a newspaper, for example, would not become an unlawful business and outside the protection of the law, merely because it occasionally, or even frequently, was convicted of libel. By this rule the defences must be tested.

The eighth, ninth and tenth defences are proper. They rely upon the averment that the plaintiff conducted a slaughter-house without securing the license or permit re-

quired by law. If this is proved, the business was unlawful.
The court has recently had occasion to consider these statutes
in State Board of Health *v.* Schwarz Brothers Co., in which
an opinion has just been filed; but I need not on this motion
consider whether the three statutes relied on in these three
pleas are all now in force. The defendant has the right to
plead them and take the judgment of the court hereafter.
I decline to strike out the eighth, ninth and tenth defences.
The eleventh defence, however, is different. It relies upon
the allegation that the plaintiff was accustomed to sell horse
flesh without tagging it, contrary to the provisions of the
statute, and that by reason thereof the business was unlawful.
I incline to think this defence may stand. The custom of
carrying on a business contrary to law may make it an un-
lawful business.

The twelfth defence specifies that the illegal conduct of
the business consisted in manufacturing adulterated food for
distribution and sale or in plaintiff having it in possession for
distribution and sale. This does not show that the business
was unlawful, for the acts relied upon may have been isolated
acts and not customary or habitual; it would be too much to
say that a business was rendered unlawful because from time
to time the statutes were not strictly complied with. I think
this twelfth defence must be stricken out. The thirteenth
defence must be stricken out for a like reason. It charges
that the statutes are violated, in that the slaughter-house was
not properly drained, plumbed and ventilated, and the opera-
tions therein carried on were conducted in such a manner as
to impair the purity and wholesomeness of the food produced,
and in that the floors, furniture, implements and machinery
were not kept in a clean and sanitary condition, protected
from flies, dust and dirt. This fails to charge facts which
make the whole business unlawful.

The eighth, ninth, eleventh, twelfth, thirteenth and four-
teenth defences are objectionable, also because they do not
aver directly that horses were slaughtered for human food,
but aver it argumentatively, charging that during the period
when horses were slaughtered, certain things were done; this

averment is consistent with the fact that slaughtering took place only on a single day; that would not amount to conducting a business. The defect is, however, amendable.

The fifteenth defence charges that diseased horses were slaughtered and pickled or corned into a product for human consumption, and that the process was carried on under unsanitary conditions, specifying them, and that the plaintiffs knowingly and willfully sold improper meat for food. This avers a crime, but the mere fact that a crime is committed in connection with a business does not make the business itself unlawful, any more than embezzlement of money by a cashier would make the business of the bank unlawful. The defence is also objectionable, in that it fails to specify with particularity the times when the offences were committed. The plaintiff is entitled to be apprised of the dates to which the proof will be directed. The defence is stricken out.

The sixteenth defence, charging that the plaintiffs were accustomed to violate the law by selling diseased meat, is good. It in substance charges what is ordinarily sufficient to constitute the crime of keeping a disorderly house.

I have dealt in detail with the defences to the first count of the declaration. The defences to the other counts are similar, and the same principles apply. In his notice counsel for the plaintiff, among other things, sets up that the law of Holland, which makes the sale of the meat said to have been sold by the plaintiff unlawful, should be set forth. In this respect I think he is right. It comes within the ordinary rule applicable to foreign law. The defence may be amended by pleading the Dutch law. As to the inducement, I think the defendant's answer is proper. It may be important for them to dispute the facts not admitted, and it would be very difficult to meet the allegation as to the pickling of horse meat for export purposes only, otherwise than the defence meets it, and yet admit all that the statute contemplates shall be admitted.

The plaintiffs are entitled to costs on this motion.