LLOYD J. KELLY, PLAINTIFF-APPELLANT, v. ARTHUR D. HOFFMAN. THE TRENTONIAN PUBLISHING COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS, AND TRENT BROADCASTING CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

Submitted February 13, 1948—Decided September 3, 1948.

For the plaintiff-appellant, *Frank I. Casey.*

For the defendant-respondent, Trent Broadcasting Corporation, *Ernest S. Glickman (John J. Connell,* of counsel).

The opinion of the court was delivered by

BURLING, J.   There is involved in the decision of this appeal the law applicable to defamation of character by radio. It presents a case of first impression in this state.   The gist of the cause of action against the defendant-respondent is found in the answer to the following question:

Is a radio broadcasting company which leases its facilities, liable for a defamatory statement during a radio broadcast by a person hired by the lessee and not in the employ of the radio broadcasting company, the words being carried to the radio listener by its facilities?

Adjectively, the question arises in the following manner: An action for defamation of character by means of the radio was initiated by the plaintiff in the Mercer County Circuit Court. This is an appeal from an order made by the Mercer County Circuit Court Judge striking out the third count of the complaint pursuant to a motion made by the defendant Trent Broadcasting Corporation upon the ground that the count set forth no cause of action. The plaintiff failed to exercise the leave granted to him by the court in the following language:

"Here an actual speaking of the words complained of consumed a period of time of some three or four minutes and is therefore a factual question to be determined by a jury as to whether this defendant used due care under all of the circumstances then existing.

"This complaint must allege a want of due care on the part of the defendant, Trent Broadcasting Corporation. It fails to do so.

"Permission, however, is granted to amend the third count of the complaint accordingly within fifteen days of the time of the filing of this memorandum. If not amended and filed, the complaint as to this defendant, will be stricken."

In this count it is alleged that this defendant was the owner and operator of radio station known as WTTM located in Trenton, New Jersey, from which broadcasts emanated and were published and circulated to listeners through machines and equipment supplied by the defendant; that it let, rented and permitted its radio facilities to be used by the co-defendant Trentonian Publishing Company and the co-defendant Arthur D. Hoffman, the alleged editor and servant of the Trentonian Publishing Company, for the making of a certain news broadcast during which statements were made by Hoffman on the 17th day of October, 1946, concerning the plaintiff which are set up *verbatim* in the pleading. The plaintiff was a public official of the City of Trenton and occupied the office of Deputy Commissioner of Public Safety. The complaint alleges the broadcasted matter reflected upon the integrity of the plaintiff as such official.

The remarks are defamatory *per se* as they impute directly and by innuendos malfeasance upon the part of a public official. *Garven* v. *Finch* (*Court of Errors and Appeals,* 1921), 97 *N. J. L.* 329; *Reilly* v. *Curtiss* (*Supreme Court,* 1912), 83 *Id.* 77. They are actionable when thus spoken or written, *Shaw* v. *Bender* (*Court of Errors and Appeals,* 1916), 90 *Id.* 147, and a suit will lie without proof of special damage, *Walsh* v. *Trenton Times, Inc.* (*Court of Errors and Appeals,* 1939), 124 *Id.* 23.

The count also contains the following allegations:

"5. Copies of the said remarks, comments, observations and criticisms were available to the said Trent Broadcasting Corporation prior to their publication on and over the radio facilities of said defendant corporation.

"6. Servants and agents of the defendant corporation were present and heard the aforesaid remarks, comments, observations and criticisms, read, spoken and published and said defendant corporation thereby published and adopted the said remarks, comments, observations and criticisms.

"7. The said defendant corporation, Trent Broadcasting Corporation, well knew the position of respect and esteem occupied by plaintiff at that time, and by means of the foregoing, wickedly and maliciously contrived to take away plaintiff's good name, fame and credit and to bring him into public infamy and disgrace."

The complaint is set forth in three counts—the first is against the defendant Arthur D. Hoffman, the second against the defendant Trentonian Publishing Company and the third count is against the defendant Trent Broadcasting Corporation. As to counts 1 and 2 answers were filed and issue was joined.

For the purpose of this motion, the defendant Trent Broadcasting Corporation admits the truth of all facts well pleaded in the complaint and all inferences of fact which can be legitimately drawn therefrom. In testing the sufficiency of a pleading its allegations may alone be looked to. It is to be noted in the disposition of the motion by the court certain extraneous facts were written into the opinion which resulted from the arguments of counsel and are not available upon the

disposition of the motion. The sufficiency of the complaint will be determined from the facts therein properly alleged from which a legal duty and liability for the violation thereof are deduced. The rules of pleading require the pleader either to aver directly the facts which constitute his claim or to set forth circumstances from which those necessarily by intendment of law result. The power to strike out a pleading as frivolous will not be exercised unless it appears clearly and palpably so and the power is to be cautiously exercised. While the present rules of the Supreme Court have abolished the distinctive common law forms, the essential and differentiating rules applicable to pleading as established at common law still survive as a matter of remedial law. *Ward* v. *Huff* (*Supreme Court,* 1919), 94 *N. J. L.* 81 (at *p.* 84).

Now to the substantive question: The pertinent cases are relatively few and the law is still and obviously in the process of crystallization. Much discussion upon the subject is found in articles in law school journals and periodicals throughout the country. So far as the briefs reveal, there is no New Jersey statute imposing or regulating the liability of broadcasting stations in such circumstances. The Federal Communications Act of 1934 (47 *U. S. C. A.,* § 315, &c.) contains a provision which forbids a radio station to exercise censorship over political broadcasts by candidates for office under certain circumstances. It is not applicable under the facts in this case. So the issue must be decided according to the common law.

If the decision hinges upon the distinctive features of the substantive law of libel and slander, then it is difficult to make.

The latest declaration in this state upon the definition of a libel is found in *State* v. *Reade* (*Supreme Court,* 1948), 136 *N. J. L.* 432:

At page 433: "All textbook writers and the decisions of our courts are in accord that 'libel' is any printed or written defamation of a person, published maliciously and without justification."

At page 434: "The common acceptation and meaning of the word 'libel' is, as stated, a written or printed defamatory

publication, as contrasted with an oral, or slanderous, statement."

Radio broadcasting has provided a medium for the publication of defamatory matter which is unique in the history of law of libel and slander. Defamatory broadcasts have been terms *sui generis,* possessing characteristics of both libel and slander. *Socolow, Law of Radio Broadcasting* (1939), § 466. Radio broadcasting presents a new problem, so new that it may be said to be in a state of development and experimentation. When courts distinguished between speech or writing or print, radio was in the realm of the fanciful. Publication by radio has physical aspects entirely different from those attending the publication of a libel or slander as the law understands them. With a growing tendency to indulge in the practice of "ad libbing" the legal problem assumes greater importance to the broadcasting stations and to the injured persons. The fact that the mechanics of broadcasting include elements of both the written and spoken word, that oral delivery at the microphone of only brief duration is accompanied by wide dissemination of the spoken matter which may be picked up by such receiving apparatus as happens to be tuned in requires an analysis of the quality of the tort and the extent of the liability to be imposed.

There are two schools of thought as to the act of publishing the defamatory statement by the broadcasting medium—one of so-called absolute liability as explained in *Sorenson* v. *Wood* (*Nebraska Supreme Court,* 1932), 243 *N. W. Rep.* 83, and the other of liability based upon negligence as elucidated in *Summit Hotel Co.* v. *National Broadcasting* (*Supreme Court of Pennsylvania,* 1939), 8 *All. Rep.* (*2d*) 302.

Volume 3 of *Torts, Restatement of the Law,* page 213, contains the following:

"f. Radio Broadcasting. The proprietors of a radio broadcasting station are at least liable under circumstances which would make a disseminator of defamatory matter liable under the rule stated in this section, that is, if they fail to exercise reasonable care to prevent the publication of defamatory matter. The caveat to § 577 raises the question, on which the Institute takes no position, as to whether such persons are

not further liable as original publishers under the rule stated in that section."

And at page 196 the following is set forth:

"Caveat: The Institute expresses no opinion as to whether the proprietors of a radio broadcasting station are relieved from liability for a defamatory broadcast by a person not in their employ if they could not have prevented the publication by the exercise of reasonable care, or whether, as an original publisher, they are liable irrespective of the precaution taken to prevent the defamatory publication."

Other pertinent citations are: *Hartmann* v. *Walter Winchell* (*New York Court of Appeals,* 1947), 296 *N. Y.* 296; 171 *A. L. R.* 759; 73 *N. E. Rep.* (*2d*) 30; *Josephson* v. *Knickerbocker Broadcasting* (*Supreme Court, Special Term, New York County,* 1942), 38 *N. Y. S.* (*2d*) 985; *Irwin* v. *Ashurst* (*Oregon Supreme Court,* 1938), 158 *Ore.* 61, 65; 74 *Pac. Rep.* (*2d*) 1127; *Locke* v. *Gibbons* (*Supreme Court, Special Term, New York County,* 1937), 164 *Misc.* 877; 299 *N. Y. S.* 188; *affirmed* (*Supreme Court, Appellate Division,* 1938), 2 *N. Y. S.* (*2d*) 1015; *Coffey* v. *Midland Broadcasting Co.* (*District Court, W. D. Missouri,* 1934), 8 *Fed. Supp.* 889; *Miles* v. *Wasmer* (*Supreme Court, Washington,* 1933), 20 *Pac. Rep.* (*2d*) 847; 25 *Marquette Law Review* 57 and 192; 24 *Marquette Law Review* (1940), 117; 88 *University of Pennsylvania Law Review* (1940) 249-296; 17 *Oregon Law Review* (1938), 308; 50 *Harvard Law Review* (1937), 725, 730; 46 *Harvard Law Review,* 134, *note* 7; *Socolow on Law of Radio Broadcasting* (1939), § 466; 104 *A. L. R.* 877; 124 *A. L. R.* 1277; 82 *A. L. R.* 1109; 171 *A. L. R.* 780.

The doctrine of so-called absolute responsibility can only be invoked by the application of the law of libel to broadcast defamation. Ordinarily libel differs from slander in that the former is more deliberate, has a much wider circulation and is permanent. The argument for classifying a radio broadcast a libel is that it has the quality of deliberation and has far-reaching circulation and in the latter respect is more damaging than libel, if untrue, although it does not have the permanency of printed matter. Yet printed defamatory words are libelous even though they reach but a few; a

defamation takes this category if the printed matter is read by only one, although that would be a consideration entering in the *quantum* of the damages.

It is contended by the appellant that some of the cases holding an absolute liability turn upon an alleged analogy of liability of a newspaper for publication. But there is obvious distinction between a newspaper libel and defamation by radio, especially where the defamation made is an interjected extemporaneous remark. The rules of law applicable to libel are based in the main on the permanence of the defamation. There are considerations which may warrant the extension of absolute liability to radio defamation, such as the size of the radio audience, the ineffectiveness of retraction. These are questions of social policy to be resolved in the legislative forum. The rule or terminology of absolute liability may hamper the radio in the performance of a public service; on the other hand the power of the radio may be abused. The balancing of the benefits and advantage and the evils arising from the abuse of the power are questions for the legislature.

A further discussion to determine whether the action of the station constitutes a libel or slander is immaterial in this case as the defamatory matter is actionable without proof of special damage (*supra*).

The crux is the responsibility as a disseminator. *Bigelow on Torts* (*8th ed.*) 287 states the hornbook rule on publication thus: "Defamation is published when the charge, suggestion, insinuation, or representation is made, by the defendant, in presence of a third person, either by intention or by negligence, or with reasonable ground to suppose that it will become known to others."

In an article by Professor Francis H. Bohlen, of the University of Pennsylvania (1937) reported in 50 *Harvard Law Review* (1937) (at *p.* 731), it is stated:

"It would seem that justice would be done and the good reputation of mankind given sufficient protection by treating the broadcasts as a disseminator rather than publisher of the defamatory interpolation.

"As disseminator like booksellers and the proprietors of newsstands, the broadcasting company would be liable if, but

only if, it had failed to exercise reasonable care to see to it that no scandal monger should take advantage of its facilities to speak over its microphone matter defamatory to other persons."

We elect to decide this case upon the broad duty of this defendant as a disseminator.

The defendant-respondent as a radio broadcasting company which leased its facilities is not liable for a defamatory statement during a radio broadcast by the person hired by the lessees and not in the employ of the radio broadcasting company, the words being carried to the radio listeners by its facilities, if it could not have prevented publication by the exercise of reasonable care.

The trial judge erred in striking out the third count of the complaint. The doctrine of non-performance of the duty of the exercise of reasonable care upon the part of the defendant to prevent the publication of defamation of character is available to the plaintiff within the language of the third count of the complaint. The third count of the complaint is sufficient to raise the rule enunciated.

The judgment (order) of the Mercer County Circuit Court is reversed.

WACHENFELD, J. (Dissenting.) The problem presented on this appeal is the liability of a radio broadcasting company for defamatory remarks by an employee of a lessee of its facilities. The question arises for the first time in this jurisdiction. According to the majority holding, radio broadcasting stations are similar to disseminators or news vendors and therefore liable only for negligence. I cannot agree with that view and believe liability should be absolute regardless of fault.

Stringent as it may be, this rule is justified by the almost limitless publication which radio broadcasting achieves. In a fleeting minute a defamatory remark is spread to the general public without effective means of retraction. Thus radio broadcasting compares to libel in its widespread publication, obtained in the latter case through written communications. On the other hand, being spoken, whether from

manuscript or not, it resembles slander. The nature of this defamation, therefore, does not permit its identification as libel or slander and to be properly treated should be classed as a distinct and new problem.

Free and unimpeded broadcasting is desirable but adequate responsibility should be fully provided for. A broadcasting company cannot allow the passing parade of known and unknown voices to utilize its facilities and then seek immunity simply because it acted in good faith and exercised reasonable care. The fact that there is federal regulation of radio broadcasting does not afford any ground for relaxing liability but points to the public interest inherent in such activity.

Liability without fault has been imposed in other jurisdictions on radio broadcasting companies for defamatory broadcasts by persons beyond their control. *Sorensen* v. *Wood,* 123 *Neb.* 348; 243 *N. W. Rep.* 83; *Miles* v. *Wasmer, Inc.,* 172 *Wash.* 466; 20 *Pac. Rep.* (2d) 847; *Coffey* v. *Midland Broadcasting Co.,* 8 *Fed. Supp.* 889. The result so reached, in my opinion, is more logical and preferable to the contrary finding in *Summit Hotel Co.* v. *National Broadcasting Co.,* 336 *Pa.* 182; 8 *Atl. Rep.* (2d) 302.

Attempt is made to categorize defamation by radio as dissemination by news vendors and book sellers. This approach seeks to apply prevailing principles of the law of libel, which are inapplicable, and overlooks the distinguishing and unique nature of radio broadcasting. The simultaneous pick-up and transmission by a broadcasting apparatus of the spoken word at its inception is certainly to be differentiated from the activity of a news vendor, who acts subsequently and only incidentally to the original written defamation. That distinction was recognized in *Summit Hotel Co.* v. *National Broadcasting Co., supra,* although it went on to reject the rule of absolute liability.

There does not seem to be any disagreement as to the justification and public policy underlying the rule of absolute liability in cases of the instant type but rather a reluctance to impose the more exacting rule, upon the reasoning that if this is the degree of liability to be established, it should be

the result of a legislative enactment rather than judicial declaration.

In the absence of statutory or constitutional restrictions, judicial determinations should be based upon a proper balancing and a full consideration of all the facts and interests involved, with due regard to their relation to and effect upon the public, and this is particularly true in the disposition of a question of novel impression where the stabilizing effect of prior decisions cannot be used as a foundation.

I am to reverse the conclusions reached below upon the ground of public policy. The defamation when transmitted by radio cannot effectively be eradicated by retraction or any other procedure. The utterance once made, the damage ensues. It could not have been made excepting for the use of the facilities and the equipment owned, maintained and provided by the broadcasting company. Its responsibility to the party injured should be definite, clear and absolute.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, COLIE, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, JJ. 12.

*For reversal, not on opinion*—WACHENFELD, SCHETTINO, JJ. 2.