9 N.J. Super. 422 (1950)
74 A.2d 922
LLOYD J. KELLY, PLAINTIFF,
v.
ARTHUR D. HOFFMAN, THE TRENTONIAN PUBLISHING COMPANY, A NEW JERSEY CORPORATION, AND TRENT BROADCASTING CORPORATION, A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 30, 1950.
*424 For the plaintiff, Mr. Frank I Casey.
For the defendants, Arthur D. Hoffman and the Trentonian Publishing Company, Mr. Kenneth J. Dawes.
For the defendant, Trent Broadcasting Corporation, Mr. Harry Green.
HUGHES, J.C.C.
By this motion for new trial, plaintiff complains of a jury verdict dismissing his cause of action, and characterizes that verdict as so contrary to the weight of the evidence, and as well, to the charge of the court, as to infect *425 it with such an apparent basis of mistake, passion or prejudice, as to require its nullification.
The suit was one for compensatory and punitive damages for defamatory words, relating to the plaintiff,[1] prepared and written by the individual defendant, Hoffman, the managing editor and acknowledged authorized agent of his employer, the defendant, Trentonian Publishing Company (hereinafter referred to as Trentonian). These words were then broadcast by said Hoffman over radio facilities owned and controlled by the defendant, Trent Broadcasting Corporation, and leased by the latter for periodic news broadcasts to the Trentonian.
The issues were as follows:  Plaintiff pleaded and proved the nature of the defamatory words, the innuendos thereof and their publication by at least two of the defendants. *426 The words published were defamatory per se as they imputed directly and by innuendos malfeasance on the part of the plaintiff as a public official of the City of Trenton. Kelly v. Hoffman, 137 N.J.L. 695 (E. & A. 1948). There was no substantial issue as to the fact of publication on the part of Hoffman and Trentonian, although the Trent Broadcasting Corporation denied it was a party to the publication, relying on the defenses available to a mere disseminator. Kelly v. Hoffman, supra.
Upon the mere proof of the publication of these words, which were defamatory per se, plaintiff, who did not testify in the cause, became entitled to the benefit of certain presumptions running in his favor, including that of the falsity of the words and the accrual of general or substantial damages, without proof of specific injury.
The defendants joined issue generally, and pleaded the following affirmative defenses which were common to all defendants: 
1. Truth, in substance and in fact;
2. The truth, the public interest, the absence of malice and the privilege arising from fair comment as to the acts of a public official, i.e., a qualified privilege;
*427 3. Privilege of the occasion, namely, the proper interest of defendants in the distribution of news through their facilities, discussing the public acts of plaintiff as a public official;
4. That defendants did not originate the charges made in the broadcast (this was in mitigation of damages);
5. That the broadcast was oral (and thus not libel as contended in some of the pleadings);
6. That the Statute of Limitations applied (based on a change in the pleadings before trial to denominate the broadcast as "libel," this being contended to assert a new cause of action).
Additionally, the defendant, Trent Broadcasting Corporation, pleaded the exercise of the reasonable care required of a disseminator.
After the testimony closed, there was no motion to strike these defenses, nor to direct a verdict for the plaintiff as to any phase of the case. The court, however, on its own motion, considered and advised the jury of the lack of any proof of the truth of the defamatory words and struck out that defense; it charged the jury on the "qualified privilege" defense of fair comment, that "comment" did not include the statement of false and defamatory facts, and for that reason and to that extent, instructed the jury to disregard that defense. As to the defense that the broadcast was oral, and thus not libel, the court dismissed that defense also, charging that in this type of action the medium of publication is not important, that such form of action, called "radio defamation" for convenience, is sui generis, in that it partakes of some, but not all, of the fundamentals of both of the common law actions of libel and slander. This reasoning also led the court to dismiss in its charge the pleaded defense of the Statute of Limitations.
These binding instructions by the court had the effect of reducing the issues to (1) the existence of actual malice as supporting the claim for punitive damages; (2) the validity of the affirmative defense of privileged occasion, i.e., the area of privilege accorded the defendants as news distributing facilities in discussing the public acts of the plaintiff; and (3) as to the defendant, Trent Broadcasting Corporation, the defenses available to a mere disseminator.
*428 Moreover, while acknowledging that under the principle of Kelly v. Hoffman, supra, the crucial norm of responsibility of a broadcasting company leasing its facilities to another, was its liability as a disseminator rather than as a publisher, the court nevertheless left to the jury the question as to whether the broadcasting company, by reason of the proved activity of its representative in control of its facilities, in editing, revising and approving the proposed broadcast script, did not so aid and abet the publication as to become itself a publisher and responsible as such. Since this is a narrow and questionable point of law under the judicial policy of our State (Kelly v. Hoffman, supra), the court sought to protect the parties by requiring the jury, in the event of a general verdict against defendants, to answer certain interrogatories under Rule 3:49-2,[2] in order to leave such point available for appeal.
These interrogatories, mainly relevant to plaintiff's verdict, went unanswered in view of the verdict returned for all defendants.
It remains to subject this verdict to a critical appraisal, in order to determine its validity in the face of the present motion. On presentation to the jury, as noted, the structural pattern of the case had been reduced to comparatively few *429 issues. Taking up these issues, the testimony was legally sufficient, although factually minimal, as to actual malice in the publication of the defamatory words. Aside from the enormity of the words themselves (as mitigated by the legal vulnerability of a public official to types of criticism of his public acts), the sole proof of malice was the admission into evidence of an editorial, hostile in its terms, published by the defendant, Trentonian, of the plaintiff. It thus appears that the verdict, insofar as it denied the plaintiff punitive or exemplary damages, was well within the scope of jury determination, and for that reason legally unassailable.
From the standpoint of its finding in exculpation of the defendant, Trent Broadcasting Corporation, there again, the verdict is completely within the area of proper jury function. There was ample proof entitling this jury to find (1) that such defendant was not a culpable actor in the publication itself; and (2) that, as a mere disseminator, it had exercised reasonable care. It is immaterial that the court itself, if sitting as a trier of the facts, would have reached a different conclusion, or that the verdict, as it resolved this issue, might be considered as discordant with the weight of the evidence. Bowen v. Healy's, Inc., 16 N.J. Misc. 113 *430 (Cir. Ct. 1938). The exercise of reasonable care by the broadcasting company, under the facts here, was well and properly within the province of jury determination.
Hence, the only apparently valid criticism of the verdict in whole, seems to me to come down to the question of whether, under the evidence, there was a factual basis for the jury verdict denying the plaintiff compensatory damages as against the defendants, Hoffman and Trentonian. While proof of special damages, where the words published are defamatory per se, is unnecessary, and the presumption of damage justifies the award of general and substantial damages without proof thereof, it is clear that a jury is not compelled to award such damages, but may return a verdict for a nominal amount. The court's charge in this case would have permitted it to return such a nominal verdict. Quaere: Was its failure to do so so shocking to reason as to indicate its motivation in mistake, passion or prejudice?
From the standpoint of the factual evidence available in support of the affirmative defenses pleaded, I do not see that this verdict, as it concerned the suit for the compensatory damages against the defendants, Trentonian and Hoffman, can otherwise be explained. The plaintiff's prima facie case, of publication of words defamatory per se, entitled him to compensatory damages, even if in a nominal amount, without more, unless there was evidence in the case to support the affirmative defenses. A critical study of that evidence, and the court's charge on the issues at law pertaining thereto, indicates that the affirmative defenses were unsupported. The defendants argue with especial fervency that the publication, which is the basis of this lawsuit, was a communication on a privileged occasion and constituted only fair comment and criticism upon the public acts of a public official. As stated, this defense was pleaded affirmatively and, in any case, our former Supreme Court has held that such defense may be availed of under the general issue. Merrey v. Guardian Publishing Co., 79 N.J.L. 177 (Sup. Ct. 1909). Comment of *431 this kind is said not to be privileged by reason of the occasion in the strict legal sense of that term. What is really meant is that fair and bona fide comment and criticism upon matters of public concern is not libel, and that the words are not defamatory.
Consideration of the evidence in the instant case develops no support for this defense. The charges of malfeasance made of the plaintiff were factual, and no attempt was made to prove the truth thereof. The clear line of demarcation between comment, however severe and denunciatory in its terms on the established public acts of a public man, and false and defamatory assertions of facts concerning his conduct, is well established, as indicated in the opinion of our Supreme Court in the case of Rogers v. Courier Post Co., 2 N.J. 393 (1949):
"[4, 5] Factually, however, this defense was not sustained by the evidence. While matters of public interest and concern, such as the public acts of a public man, if truly stated, are legitimate subjects of criticism, and everyone has the right to comment thereon so long as he does so fairly and without malice, nevertheless, the rule is well settled in this State, and in the great majority of jurisdictions elsewhere, that the defense of fair comment and criticism must be founded on true facts. What is thus privileged, if we may use that term, is the comment and criticism, and not the statement of alleged facts on which they are based, and if one states facts otherwise libelous, he will not be privileged under the plea of fair comment if they are not true. Such a plea does not extend to the making of false statements, and it is no defense that they were mistakenly or honestly made, although such matters may be considered in mitigation of damages. Newspapers have no greater rights or privileges in this respect than ordinary citizens. Schwarz Bros. Co. v. Evening News Pub. Co., 84 N.J.L. 486, 494-496 (Sup. Ct. 1913); Merrey v. Guardian Printing & Publishing Co., 79 Id. 177, 184 (Sup. Ct. 1909); affirmed, 81 Id. 632 (E. & A. 1911); Benton v. State, 59 Id. 551, 560, 561 (E. & A. 1896); State v. Dedge, 101 Id. 131, 140 (E. & A. 1924); Lindsey v. Evening Journal Ass'n., 10 N.J. Misc. 1275, 1280 (Sup. Ct. 1932); Burt v. Advertiser Newspaper Co., 154 Mass. 238, 28 N.E. 1, 13 L.R.A. 97 (Sup. Ct. Mass. 1891); Washington Times v. Bonner, 86 Fed.2d 836, 842 (U.S.Ct. Appeals Dist. Columbia 1936); Ogren v. Rockford Star Printing Co., 288 Ill. 405, 123 N.E. 587, 592 (Sup. Ct. Ill. 1919); Upton v. Hume, 24 Or. 420, 21 L.R.A. 493, 41 Am. St. Rep. 863 (Sup. Ct. Or. 1893): Restatement, Torts. Vol. 3, §§ *432 598, 606, 607, pp. 260, 275-285; 33 Am. Jur. (Libel & Slander), § 79, p. 92; Ibid., § 169, p. 163; 53 C.J.S. (Libel & Slander), § 134, pp. 218-219."
Multiple issues were presented to the jury in the instant case for determination and those issues, as I see them, are separable to such extent as to accommodate a new trial on one of them, leaving the verdict undisturbed as to the others. Rule 3:59-1.
I determine that the verdict of the jury, as it concerned the denial of compensatory damages to the plaintiff against the defendants, Trentonian and Hoffman, was so contrary to the weight of the evidence as to indicate its basis as mistake, passion or prejudice and, therefore, that a new trial as to such issue should be granted. As to so much of the verdict as relieved the Trent Broadcasting Corporation of liability, and as acquitted all defendants of responsibility for punitive or exemplary damages, I find that the same was amply supported by the evidence and a new trial as to such issues is denied.
An order to such effect may be presented by counsel.
NOTES
[1] "Lloyd Kelly, Deputy to the Mayor, is the subject of the juiciest bit of comment around the Police Department heard in many a year.

"Comment involves his advocating of the use of Ford automobiles for the Police Department of Public Safety and the methods used to get his favorite lined up for City business.
"Police here have used Chevrolets for years, the reason being that they hold up better in the opinions of Police Equipment Experts for the particular kind of wear they get in Trenton traffic. The Police Garage is set up for Chevrolets. All the spare parts are for Chevvies and the mechanics are most expert on Chevvy models.
"Yet ever since Kelly obtained a Ford Station Wagon from a local Ford dealer, and City officials had their pictures taken by the press in front of City Hall with it, Kelly has been pressuring authorities to change over to Fords.
"At City Commission Meeting on October 10, a resolution was passed without opposition authorizing advertisements for proposals for either Fords, Chevrolets, or Plymouths. Investigation of the inclusion of makes other than Chevrolets disclosed the following:
"The City Purchasing Agent was asked to make the rounds of automobile dealers, including Bonderchuk Chevrolet, 1285 S. Broad St., which yesterday was granted a contract for the supply of a Chevrolet One-half Ton Pickup Truck and Two Chevrolet Special DeLuxe Sport Coupes for the Trenton Water Works, on their bid amounting to $2995.25.
"Bonderchuk has been the recipient of most of the City have specified Chevrolets in their requests for replacements this year, except the Department of Public Safety.
"It has been alleged by sources around Police Headquarters that after getting estimates on the trade-in offers from dealers, the size of the offer was relayed by Kelly to Hudler with the advice to make his about $100 more on the trade-in.
"The Purchasing Agent, Carl Schlicher, was then threatened by Kelly that should any other bids be lower than, he (Kelly) would know Schlicher was responsible, since Schlicher was the only one to know the size of the trade-in offers and Kelly's schenanigans with them.
"The Trentonian is releasing this information obtained through heretofore reliable informants, knowing that Schlicher's position is protected by Civil Service and that he cannot in any way be harmed by its disclosure.
"We also feel that the Police Department and the hard working mechanics that keep its cars in running order deserve some consideration other than capricious switchover to makes of cars with which they are not fully familiar.
"City Commission next Thursday is scheduled to receive the bidding from Plymouth, Chevrolet and Ford dealers.
"I feel safe in assuming that I will be hearing from Mr. Kelly before that unless he has forgotten his lawyer's phone number."
[2] Interrogatories propounded to jury under Rule 3:49-2:

"1. In the event the jury finds a verdict against the plaintiff and for the defendants, or one or more of the defendants, as to the issue of compensatory damages, or punitive damages, the proper form for return of its verdict is `No Cause of Action' as to such issue, and as to such defendant.
"2. If the jury finds a verdict for the plaintiff, it must return a general verdict in his favor in a specific lump sum, in this general form `We find for the plaintiff in the amount of $ ____' (one lump sum).
"3. The jury must specify in returning any such verdict for plaintiff, whether the whole of such sum is for compensatory damages, and if so, the defendants against whom such verdict is returned.
"4. If the verdict includes both compensatory damages and punitive damages (exemplary), the jury must specify the amount of compensatory damages therein included and against which defendants it finds such compensatory damages, and must specify the amount of punitive damages (exemplary) therein included, and against which defendants it finds such punitive (exemplary) damages.
"5. If the jury finds a verdict against the defendant, Trent Broadcasting Company, the jury will also make a specific finding of fact as to whether the defendant, Trent Broadcasting Company, is liable as (1) an actual party to the publication, or (2) as a mere disseminator of the defamatory material, failing to use reasonable care to prevent such publication.
"If the jury finds by its unanimous agreement, that such defendant, Trent Broadcasting Company, was an actual party to the publication, it shall authorize its Foreman to insert here in his handwriting the words (party to the publication) ____.
"If the jury, failing to find that said defendant was a party to the publication, nevertheless finds that it was a disseminator of the defamatory material, basing its verdict thereon, it shall authorize its Foreman to insert here in his handwriting the word (disseminator) ____.
 "_______________
 Judge."